560 A.2d 613

### FORT WASHINGTON CARE CENTER LIMITED PARTNERSHIP d/b/a Fort Washington Rehabilitation Center

v.

### DEPARTMENT OF HEALTH AND MENTAL HYGIENE.

No. 1401, Sept. Term, 1988.

Court of Special Appeals of Maryland.

July 10, 1989.

Howard L. Sollins (Leslie A. Demaree and Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, for appellant.

Lawrence J. Ageloff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BLOOM and WENNER, JJ.

BLOOM, Judge.

Appellant, Fort Washington Care Center Limited Partnership, doing business as Fort Washington Rehabilitation Center (Fort Washington), provides nursing home care to indigents under Maryland's Medical and Pharmacy Assistance Program, Md. Health–General Code Ann., Title 15, subtitle 1,[1] which, in turn, is partially financed under the Federal Medicaid Program. *See* 42 U.S.C. § 1396 *et seq.* In order to be reimbursed for care it provided for indigent patients under that program for fiscal years 1983 and 1984, appellant submitted medical cost reports to appellee, the Department of Health and Mental Hygiene of Maryland (the Department). The Department's designee, a private accounting firm (auditor), conducted routine field verifications in reviewing Fort Washington's reports and submitted adjustment reports for each of the two years. Challenging the adjustments made by the auditor, Fort Washington appealed to the Department's Nursing Home Appeal Board. The appeal board upheld the auditor, and Fort Washington appealed that decision to the Circuit Court for Prince George's County. The court, in turn, affirmed the appeal board, and from the circuit court's judgment, Fort Washington noted a timely appeal to this Court.

Appellant operates a duly licensed 150 bed comprehensive and intermediate care nursing home facility (*see* COMAR 10.09.02 and .11) in Prince George's County, Maryland. The matter in dispute concerns the intermediate care services only. The facility was constructed in 1983 with financing guaranteed by a federal program under the United States Department of Housing & Urban Development (HUD). This appeal involves the mortgage interest and the acquisition costs of that HUD mortgage.

---

1. All references to sections of the Code in this opinion are to Maryland Health–General Code Annotated.

When the Department, on the basis of the auditor's report, made certain "cost report adjustments" reducing the amount of reimbursement claimed by Fort Washington for the interest and associated financing costs of its HUD mortgage for each of the two years in question, a separate appeal to the Nursing Home Appeal Board was taken by Fort Washington, pursuant to § 15–108, for each fiscal year. Appellant contested several items, including mortgage costs, in the Department's adjustment reports. After the appeal board sustained the cost adjustments made by the Department, Fort Washington appealed each decision and, on its motion, the appeals were consolidated, placing the common issue of the board's ruling concerning appellant's mortgage acquisition and interest expenses before the circuit court in a single proceeding.[2]

In this appeal from the court's affirmance of the appeal board's decisions, the following question is presented for our review.

Did the circuit court err in affirming the Department's interpretation and application of COMAR 10.09.11.-07E(11)(c) and (e) and (14), which application resulted in a denial of full Medicaid reimbursement for Fort Washington's mortgage interest expense and acquisition costs.

Our answer to this question is "No"; accordingly, we will affirm the judgment of the circuit court.

The system for reimbursement of allowable costs to intermediate care facilities participating in the Medicaid Program is set forth in sections 15–105, 15–107, 15–108, and 15–114 of the Code. The statutory formulae have been

---

2. Specifically, before the circuit court was the appeal board's ruling concerning the items in the Department's report referred to as (1) "adjustment number 90—amortization of mortgage acquisition," resulting in a recoupment of $2,989; (2) "adjustment number 79—interest expense," resulting in a $54,004 recoupment to the state for fiscal year 1983; (3) "adjustment number 52—amortization of mortgage acquisition," resulting in a recoupment of $5,380; and (4) "adjustment number 46—interest expense," resulting in a recoupment to the state of $161,072 for fiscal year 1984.

implemented by a series of regulations adopted by the Department, which are set forth in the Code of Maryland Administrative Regulations. Specifically, COMAR 10.09.11 sets forth the details of the reimbursement system.

Under COMAR 10.09.11, each nursing home is paid a per diem rate for each Medicaid beneficiary receiving services. That per diem rate is a composite figure, calculated by adding together the amounts to which a particular provider is entitled under four separate cost centers. Only one cost center used to determine Fort Washington's per diem rate is involved in the appeal: the capital and property cost center. The applicable regulations describing the reimbursement to medicaid providers under the capital and property cost center are found in COMAR 10.09.11.07E. Those regulations provide that the capital and property cost center is itself a composite, permitting reimbursement for five allowable associated costs of a facility, including property taxes, property insurance, mortgage interest, lease costs, and depreciation. Of those five, the only two at issue are the Department's allowance of mortgage interest and related financing costs.

▇ Appellant challenges the Department's interpretation of its own regulations with respect to capital cost reimbursement. Specifically, appellant contends that COMAR 10.09.11.07E(14), by incorporating COMAR 10.09.11.-07E(11)(c) and (e) by reference, requires that all maximum allowable debt cost, specifically mortgage debt interest, be indexed forward annually to allow for an inflationary adjustment to a provider's existing debt.

COMAR 10.09.11.07E(14) provides:

Debt, and the interest on that debt, may not be allowed as a basis for reimbursable cost to the extent that the debt exceeds the allowable appraised value from section E(11)(e) of this regulation.

COMAR 10.09.11.07E(11)(c), in turn, establishes the allowable debt for land, buildings, and movable equipment as follows:

The allowance for movable equipment will be established at $2,200 per licensed bed for March, 1981, will be indexed forward as determined from § E(9) of this regulation, and will be added to the appraised value determined from § E(11)(a)—(d) of this regulation.

Further, COMAR 10.09.11.07E(11)(e) establishes the ceiling on allowable debt for land, buildings and movable equipment:

This limit will be established at $22,000 per licensed bed for March, 1981, and will be indexed forward as determined from § E(9) of this regulation.

It is appellant's position that:

[I]n each year since the regulations became effective in January 1, 1983, these $22,000 and $2,200 ceilings have been increased. Newer facilities being constructed since 1983 have their actual debt "allowed" and reimbursed at the higher levels. However, the Department has now determined that, even though the ceilings are indexed forward annually, Fort Washington will be denied the benefit of these future inflation adjustments despite the clear language of the regulations to the contrary. Rather, the maximum allowable debt for Fort Washington has been immutably established by the Department using the ceiling in effect on the date of the facility's entry into the Medicaid Program. There is absolutely no basis for this interpretation of COMAR 10.09.11.07E(11)(c) and (e) and (14).

There is no disputing that the regulatory caps set forth in § 7E(11)(c) and (e) provide that they are to be indexed forward annually according to inflation factors described in COMAR 10.09.11.07E(9). The Department, however, interprets the above-cited regulations to mean that a one-time maximum allowable mortgage debt ceiling is established for a facility for reimbursement purposes as of the time it becomes a Medicaid provider. That set cap is indexed forward, and the debt ceiling accordingly raised to account for inflation, only for the benefit of setting an initial debt ceiling for new providers entering the program. If the

capital cost debt of a new facility is higher than that of an older facility because of inflationary factors affecting the later entry, a corresponding higher allowable mortgage debt ceiling is required. Under this interpretation, once a facility becomes a participating provider, its allowable mortgage debt is capped as of the date of entry, and the Department does not thereafter increase the amount of allowable debt. In response to this interpretation, appellant makes reference to the net capital rental value aspect of the capital and property cost center (net capital rental value is the mechanism by which nursing homes are reimbursed for the use of their physical facilities) to "appreciate the arbitrary and discriminatory nature of the Department's interpretation of the inflation adjustment regulations." We reject appellant's interpretation; it completely ignores the fact that Fort Washington's debt costs are fixed and, over time, continuously reduced, while capital rental value is changeable with economic conditions. Appellant's interpretation would result in a windfall—the reimbursement rate factor for mortgage interest would be increased while the amount of interest on the mortgage debt is decreasing by virtue of the amortized retirement of its mortgage debt. The Department's practice of capping a provider's mortgage debt at one point in time is consistent with Medicare's federal reimbursement plan.[3] Under Medicare regulations, loans secured for financing the purchase of a facility acquired after July 1970 are similarly capped at either the historical cost or the cost basis. 42 C.F.R. § 413.130(f)(2). Medicare does not increase the debt allowance during the life of the loan.

■ Appellant's second cost reimbursement contention concerns the Department's treatment of Fort Washington's

---

**3.** Medicare is a health insurance program which provides for payment for medical care to persons over 65 years of age. Part A covers hospital costs and is reimbursed by the federal government. 42 U.S.C. § 1395. Medicaid, on the other hand, is a federal-state program with each sharing reimbursements payments to nursing homes for services provided to qualifying beneficiaries. 42 U.S.C. § 1396.

mortgage acquisition costs. Fort Washington's nursing home was constructed with a $4.9 million mortgage loan. Certain mortgage acquisition costs, such as "points" and other financing fees, totalling $291,000, were incurred. Fort Washington included the $291,000 acquisition costs within its $4.9 million mortgage loan, opting to finance the costs through the mortgage instead of paying them separately. In so doing, Fort Washington increased the amount of its total mortgage debt by $291,000. Consequently, in calculating Fort Washington's maximum allowable mortgage debt for reimbursement under § 10.09.11.07E(11)(e), the Department included these acquisition costs as a component of the total mortgage debt, with the result that the mortgage debt exceeded the allowable debt ceiling. As set forth *supra*, § 10.09.11.07E(14) provides that reimbursement of mortgage debt costs is limited "to the extent that the debt exceeds the allowable appraised value from section E(11)(e) of this regulation." Thus, under the Department's treatment of the acquisition costs, Fort Washington did not receive the full mortgage debt reimbursement it claimed in its submitted Medicaid cost reports.

Appellant contends that the Department has erroneously interpreted the allowable debt ceiling under § 7E(11)(e) to operate as a limitation in reimbursement for mortgage financing and acquisition costs pursuant to § 7E(14) It argues that, although it had included its acquisition costs within its mortgage, such costs should nonetheless be excluded from its mortgage debt when calculating maximum allowable costs for reimbursement. That interpretation would afford it a windfall. Having accepted the benefit of financing its acquisition costs within the mortgage, it desires to escape the consequences of creating a corresponding higher mortgage debt. Section 7E(14) is unambiguous; it provides for reimbursement for "debt and interest on that debt," and it makes no exclusionary exceptions for any particular component of the mortgage debt. We believe the Department's treatment of the acquisition costs not only

finds support in the overall Medicaid reimbursement policy and objectives, but is also eminently reasonable.

██ The standard for our review of the appeal board's decision, like that of the circuit court, is set forth in Maryland Administrative Procedure Act, Md. State Government Code Ann., § 10–215, which mandates that the ruling by the board be affirmed if supported by competent, material, and substantial evidence.

In regard to this standard, the Court of Appeals has additionally indicated that a reviewing court is under no statutory constraints in reversing an order which is premised upon an erroneous conclusion of law. *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296 (1985). Here our concern is with the board's affirmance of the Department's interpretation of its own regulations governing reimbursement to Medicaid providers.

██ In applying the substantial evidence test, the Court of Appeals has made it clear that a "court should not substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 513, 390 A.2d 1119 (1978). The Department is responsible for the comprehensive administration of the Maryland Medicaid Assistance Program, including the adoption of rules and regulations for reimbursement of providers under the program. Moreover, the sole function of the appeal board, an independent body composed of three individuals "knowledgeable in Medicare and Medicaid reimbursement principles," is to decide issues of reimbursement to providers. It is additionally well settled that courts give special weight to an agency's interpretation of its own regulations. "A court will defer to the interpretation an agency gives its own administrative rules and regulations." *B & O Railroad v. Bowen*, 60 Md.App. 299, 482 A.2d 921 (1984). In *Md. Commission on Human Relations v. Bethlehem Steel*, 295 Md. 586, 593, 457 A.2d 1146 (1983), the Court stated:

[A]gency rules are designed to serve the specific needs of the agency, are promulgated by the agency, and are utilized on a day-to-day basis by the agency. A question concerning the interpretation of an agency's rule is as central to its operation as an interpretation of the agency's governing statute. Because an agency is best able to discern its intent in promulgating a regulation, the agency's expertise is more pertinent to the interpretation of an agency's rule than to the interpretation of its governing statute....

Health care regulations are particularly complex, requiring considerable expertise in formulating and interpreting them. The Supreme Court, describing the Medicaid Program as created by the Social Security Act, has stated that "the Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction ... makes the Act almost unintelligible to the uninitiated." *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

■ Turning to the regulations at issue, we are reminded that the primary goal in a case requiring statutory construction is to ascertain and effectuate the intent of the Legislature. *Rucker v. Comptroller of the Treasury*, 315 Md. 559, 555 A.2d 1060 (1989); *Comptroller v. American Satellite*, 312 Md. 537, 544, 540 A.2d 1146 (1988). In fulfilling this function, the reviewing court considers the language of the enactment itself in its natural and ordinary significance as well as construction which promotes the most reasonable result in light of the objectives and purpose of the enactment. *Rucker, supra*, 315 Md. at ——, 555 A.2d 1060; *American Satellite, supra*. The purpose of the Medicaid Program reimbursement system as provided for in the regulations at issue is the reimbursement of reasonable allowable costs of providing services to Medicaid beneficiaries; not for reimbursement of all the costs related to starting a business. The Department, in adopting regulations to implement the program, legitimately sought to encourage the efficient and economical use of medical facili-

ties. Indexing forward a provider's debt after it has been incurred and fixed, or excluding mortgage acquisition costs from that debt, would be inconsistent with the fundamental purpose of Medicaid reimbursement and regulations. We believe that the Department's interpretation of its own regulations is not only similar to federal interpretations of Medicare regulations but is also consistent with reason, logic, and sound business practices.

We perceive no error in the circuit court's affirmance of the Nursing Home Appeal Board's decision upholding appellee's interpretation of its regulations and resulting adjustments to appellant's cost reports.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.