657 A.2d 372

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE**

v.

**RIVERVIEW NURSING CENTRE, INC.**

**No. 958, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

April 27, 1995.

594

596

Lawrence Joseph Ageloff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellant.

Stephen J. Sfekas (Weinberg and Green, on the brief), Baltimore, for appellee.

Argued before FISCHER, DAVIS and HARRELL, JJ.

HARRELL, Judge.

This appeal arose from a decision of the Department of Health and Mental Hygiene's (the Department) to disallow a portion of appellee's claimed Medicaid reimbursement for nursing home services in the fiscal periods ending 30 June 1989 and 31 December 1989.

■ Pursuant to Md.Code Ann., Health–Gen. § 15–108 (1994 repl. vol.; 1994 Supp.), appellee, Riverview Nursing Centre, Inc. (Riverview), appealed the Department's decision to the Nursing Home Appeal Board (NHAB).[1] The NHAB affirmed the Department's decision. Appellee then appealed to the Circuit Court for Baltimore County. The circuit court reversed, and the Department filed a timely appeal to this Court, arguing that:

1. The Department and the NHAB properly interpreted COMAR 10.09.11.10B and I to deny reimbursement for interest earned by the facilities on its invested funds.

2. The trial court erred in reversing the Department's interpretation and application of COMAR.

---

1. The NHAB, part of the Department of Health and Mental Hygiene, is the administrative agency that is designated to hear disputes regarding Medicaid reimbursement. See, Md.Code Ann., Health–Gen. § 15–108 (1994 repl. vol.; 1994 Supp.) which provides for the creation of an appeal board.

## *FACTS*

Riverview operates a nursing home located in Baltimore County, Maryland. Riverview participates in the Medical Assistance Program of the Department of Health and Mental Hygiene of the State of Maryland. The Medical Assistance Program (the Program), commonly referred to as Medicaid, is a state program, partially funded by the federal government, which reimburses medical providers, including nursing homes, for medical care rendered to persons who are indigent or medically indigent. 42 U.S.C. § 1396 *et seq.*

 Title XIX of the Social Security Act, which created and governs the Medicaid Program, requires each participating state to adopt a plan for administration of medical assistance for the needy, and to designate an agency responsible for administration of the plan. 42 U.S.C. § 1396 *et seq.* In Maryland, the Department is the designated agency and, pursuant to Md.Code Ann., Health–Gen. § 15–103 (1994 repl. vol.; 1994 Supp.), has a statutory responsibility to adopt rules and regulations for the reimbursement of providers under the Program. Maryland's federally approved Medicaid reimbursement plan is contained in COMAR 10.09.11.[2] Where COMAR does not specify otherwise, federal Medicare principles of reimbursement, contained in the Medicaid Act, Provider Reimbursement Manual (PRM)[3], and Medicare regulations control.[4]

---

2. Effective 27 November 1989, COMAR Chapter 10.09.11 was revised and renumbered. 16:17 Md.R. 1901–1920 (25 August 1989): 16:23 Md.R. 2505–2506 (17 November 1989). The revision was not substantive. The COMAR references herein use the current numbering.

3. The PRM contains Medicare reimbursement guidelines published by the U.S. Department of Health and Human Services which elaborate upon the Medicare reimbursement regulations found in 42 C.F.R. Part 413.

4. COMAR 10.09.11.07B(2) provides that "[a] provider's allowable per diem costs are reviewed according to the principles established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and contained in the Medicare Provider Reimbursement Manual (PRM), HCFA Publication 15–1, unless otherwise specified by this chapter."

■ On 1 January 1983, Maryland instituted a new and innovative Medicaid reimbursement plan. The previous reimbursement scheme was a retrospective payment system based primarily upon Medicare principles of reimbursement. In addition, there was no payment for return on equity, and providers were compensated for depreciation expense, or in the case of leased facilities, rent. *See,* Roger C. Lipitz and Herbert P. Weiss, *Dissecting Maryland's Medicaid System,* Contemporary LTC (Long Term Care), February 1985, at 41. The new and continuing reimbursement system, set forth in COMAR 10.09.11, pays nursing homes a per diem rate for each Medicaid patient receiving services. The per diem rate is calculated as a composite of four separate cost centers: (1) administrative and routine costs, (2) direct nursing care costs, (3) other patient care costs, and (4) capital costs. COMAR 10.09.11.07.

■ This case arises over a dispute regarding the Department's method of calculating reimbursement in the capital cost center. Under COMAR 10.09.11.10C, the final per diem costs that are reported in the capital cost center include: (1) property taxes; (2) property insurance; (3) mortgage interest; (4) net capital value rental and (5) central office capital costs. Under Maryland's reimbursement system, providers who operate leased facilities, such as Riverview, are not reimbursed for their rent. Instead, they are reimbursed for the physical use of their facilities through the net capital value rental (NCVR) component of the capital cost center.[5] To calculate the NCVR, COMAR 10.09.11.10I sets forth the formula whereby a mortgage debt and interest on that debt are imputed for leased facilities.

---

5. An underlying principle of Maryland's reimbursement system calls for investor operated and non-investor operated facilities to be reimbursed under the same formula for capital related costs. The intent of this reimbursement system is to insure that facilities providing the same service—whether those facilities are leased or owned—will receive the same rate of reimbursement. Roger C. Lipitz and Herbert P. Weiss, *Dissecting Maryland's Medicaid System,* Contemporary LTC (Long Term Care), February 1985, at 41, 53–54.

At issue in this case is the method by which the Department establishes a nursing home's net interest expenses in the capital cost center. Under the Department's system of reimbursement, the determination of a facility's allowable interest expense is a two step process that requires the application of both COMAR 10.09.11.10I and 42 C.F.R. § 413.153(b)(2)(iii). COMAR 10.09.11.10I specifies how an allowable imputed mortgage interest expense is established for a non-investor operated nursing home. Next, to determine the final reimbursable interest expense, the Department applies the Medicare interest "offset rule" to deduct earned interest income from the imputed mortgage interest. The offset rule, set forth in 42 C.F.R. § 413.153(b)(2)(iii) (1994), provides that interest expense generally must be "[r]educed by investment income."[6] The primary purpose of the interest "offset rule" is to prevent the reimbursement of unnecessary borrowing costs. *See,* P.R.M. § 202.2.

Under this formula, the Department maintains that it appropriately reduced Riverview's imputed interest expense by its earned investment interest income. Appellee contends, however, that (1) Medicare principles of reimbursement prohibit the Department from applying the interest offset rule to its imputed ("imaginary" or "phantom") interest costs; (2) the imputed interest is merely a surrogate for rent and interest income cannot be set off against rent; and finally, (3) the application of the interest offset rule to non-investor operated facilities does not further Program purposes. In response, the Department argues that although COMAR regulations do not explicitly call for application of the interest offset rule, the offset of interest income against interest expense is required by Maryland's Medicaid regulations, and, furthermore, the interest offset rule has been consistently applied to all provid-

---

**6.** 42 C.F.R. § 413.153, which deals with interest expense, provides:
(a)(1) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost....
(b) *Definitions....* (1) *Interest....*
(2) *Necessary.* Necessary requires that the interest be ...
(iii) reduced by investment income....

ers that rent their facilities since the inception of the State's current reimbursement system in 1983.

## Standard of Review

■■■■ The limitations on the authority of a court reviewing the final order of an administrative agency are substantial. This Court's role in reviewing an administrative decision "is precisely the same as that of the circuit court." *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899, 909 (1994) (citation omitted). In *Fort Washington Care Ctr. Ltd. Partnership v. Department,* 80 Md.App. 205, 560 A.2d 613 (1989), we explained that the standard of review of a NHAB decision, as set forth in the Maryland Administrative Procedure Act, Md.Code Ann., State Gov't § 10–222(h) (1993 repl. vol.; 1994 Supp.), "mandates that the ruling by the board be affirmed if supported by competent, material, and substantial evidence." *Id.* at 213, 560 A.2d at 617.[7]

The standard of review to be applied depends on the nature of the agency finding being reviewed. *Gray v. Anne Arundel Co.,* 73 Md.App. 301, 308, 533 A.2d 1325, 1329 (1987). In *Caucus Distributors, Inc. v. Maryland Securities Comm'r,* 320 Md. 313, 577 A.2d 783, 788 (1990), the Court described the

---

**7.** The Maryland Administrative Procedure Act, Md.Code Ann., State Gov't § 10–222(h) (1993 repl. vol.; 1994 Supp.) provides:

In a proceeding under this section, the court may:
(1) remand the case for further proceedings;
(2) affirm the final decision; or
(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion or decision:
　(i) is unconstitutional:
　(ii) exceeds the statutory authority or jurisdiction of the final decision maker;
　(iii) results from an unlawful procedure;
　(iv) is affected by any other error of law;
　(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
　(vi) is arbitrary or capricious.

review process under § 10–215(g), the predecessor to § 10–222(h), as follows:

> In determining whether an agency's decision is supported by substantial evidence, we are mindful that substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In applying the substantial evidence test, we must not substitute our judgment for the expertise of the agency, for the test is a deferential one, requiring "restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions." This deference applies not only to agency fact-finding, but to the drawing of inferences from the facts as well. When, however, the agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency.

*Id.* at 323–24, 577 A.2d at 788 (citations omitted).

 To the extent the issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the substantial evidence test. *State Admin. Bd. of Election Laws v. Billhimer,* 314 Md. 46, 58–59, 548 A.2d 819, 825 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989). In contrast to factual challenges, the substituted judgment standard is used with respect to a claim that the agency erred as a matter of law. *Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 624 A.2d 941, 946 (1993); *Department of Health and Mental Hygiene v. Reeders Memorial Home, Inc.,* 86 Md.App. 447, 452, 586 A.2d 1295, 1297 (1991); *Perini Services, Inc. v. Maryland Health Resources Planning, Comm'n,* 67 Md.App. 189, 201, 506 A.2d 1207, 1213 (1986); *cert. denied,* 307 Md. 261, 513 A.2d 314 (1986). A challenge as to a regulatory interpretation is, of course, a legal issue. *Perini Services, Inc.,* 67 Md.App. at 201, 506 A.2d at 1213. Upon appellate review, however, courts give special weight to an agency's interpretation of its own regulations. As this Court explained:

[C]ourts bestow special favor on an agency's interpretation of its own regulation. Recognizing an agency's superior ability to understand its own rules and regulations, a "court should not substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken."

*Reeders Memorial Home,* 86 Md.App. 447, 453, 586 A.2d 1295, 1297 (1991) (citing *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 511–13, 390 A.2d 1119, 1124 (1978)). In particular, we have acknowledged the expertise of the NHAB as an independent body whose members are "knowledgeable in Medicare and Medicaid reimbursement principles" and whose purpose is to decide issues of reimbursement. *Reeders Memorial Home,* 86 Md.App. at 453, 586 A.2d at 1297–98; *Fort Washington Care Ctr. Ltd. Partnership,* 80 Md.App. at 213, 560 A.2d at 613.

This court has previously reviewed the Department's system of Medicaid reimbursement. As in the case now before us, *Fort Washington Care Ctr. Ltd. Partnership v. Department of Health and Mental Hygiene,* 80 Md.App. 205, 560 A.2d 613 (1989) involved a challenge to the Department's interpretation of COMAR 10.09.11.07, i.e., the regulations dealing with capital cost reimbursement. Specifically, at issue in *Fort Washington Care Ctr. Ltd. Partnership* was a decision by the NHAB to deny full Medicaid reimbursement for Fort Washington's mortgage interest expense and acquisition costs. In upholding the Department's reimbursement decision, we stated that the Department's interpretation and application of COMAR "not only [found] support in the overall Medicaid reimbursement policy and objectives, but [wa]s also eminently reasonable." *Id.* at 212–13, 560 A.2d at 618.

This Court again examined a Medicaid reimbursement dispute regarding COMAR 11.09.11.07 in *Department of Health and Mental Hygiene v. Reeders Memorial Home,* 86 Md.App. 447, 586 A.2d 1295 (1991). In *Reeders Memorial Home,* the nursing home provider challenged the Department's method of calculating the NCVR. We again held that the Department's interpretation of COMAR was correct, noting that "the De-

partment's interpretation of the applicable regulations has been consistent throughout the history of appellee's administrative experience with NHAB." *Id.* at 455, 586 A.2d at 1299.

More recently, the Court of Appeals, in reviewing a dispute relating to a nursing home provider's reimbursement for interest on a loan, stated that a "decision of an administrative agency carries with it a presumption of validity; consequently, judicial review is limited to determining whether a reasoning mind could have reached the factual conclusion reached by the agency." *Liberty Nursing Ctr., Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941, 946 (1993). With these principles of review in mind, we turn to the NHAB's decision and the circuit court's ruling.

## Discussion

■ . Although this case involves a dispute over a " 'statutory interpretation'—the interpretation of a regulation—[an issue] upon which a court may freely substitute its judgment for that of the administrative agency," with regard to any ambiguity, we must "look to the intent of the State in adopting the regulation...." *Genstar Stone Paving Products Co., Inc. v. State Highway Admin.,* 94 Md.App. 594, 602, 618 A.2d 256, 259 (1993). In examining the regulations at issue in this case, we recognize "that the primary goal in a case requiring statutory construction is to ascertain and effectuate the intent of the Legislature." *Fort Washington Care Ctr. Ltd. Partnership,* 80 Md.App. at 214, 560 A.2d at 618. Because the field of Medicaid reimbursement is particularly complex and requires special agency expertise, *Reeders Memorial Home,* 86 Md. App. at 453, 586 A.2d at 1297–98, *Fort Washington Care Ctr. Ltd. Partnership,* 80 Md.App. at 214, 560 A.2d at 618, the Department is best able to discern its intent in promulgating the regulations, and "the agency's expertise is more pertinent to the interpretation of [its] rule...." *Maryland Comm'n on Human Relations v. Bethlehem Steel Corp.,* 295 Md. 586, 593, 457 A.2d 1146, 1150 (1983).

▆▆ The purpose of the Medicaid program reimbursement system, as provided for in the regulations at issue, is the reimbursement of reasonable allowable costs of providing services to Medicaid beneficiaries, not reimbursement of all the costs related to the facility. *Fort Washington Care Ctr. Ltd. Partnership*, 80 Md.App. at 214, 560 A.2d at 618. The Medicaid Program requires that providers of necessary medical care and services be reimbursed at "reasonable and adequate" rates. 42 U.S.C. § 1396a(a)(13)(A). Specifically, nursing homes participating in the Medicaid Program are reimbursed

> through the use of rates (determined in accordance with methods and standards developed by the state) ... which the state finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable state and federal laws, regulations, and quality and safety standards....

42 U.S.C. § 1396a(a)(13)(A).

Application of the interest offset rule to both investor and noninvestor-operated facilities has several important purposes in addition to insuring that providers are reimbursed at "reasonable and adequate rates." First, the Department ensures that medical facilities operate in an efficient manner by requiring that providers borrow only what they need to fulfill capital requirements related to providing services to Medicaid beneficiaries. Second, the Department also safeguards an essential goal of the State's regulations—to treat facilities in the same manner by reimbursing them under the same formula for capital related costs regardless of the type of ownership. By requiring that mortgage debt and interest thereon be imputed for non-investor operated facilities such as Riverview, Maryland's reimbursement system sets investor operated and non-investor operated facilities on an equal footing in the area of capital reimbursement.

In addition, the imputed interest expense aspect of the calculation in accordance with COMAR 10.09.1107 is not

"purely hypothetical," as Riverview argues, but has actually been included as an allowable cost and has been reimbursed to the provider. Because this aspect actually exists for reimbursement purposes in accordance with the federal Medicare statute (which Riverview does not quarrel with and accepts the benefit of), the calculation should be subject, to the extent possible, to the same tests of necessity as interest actually incurred. If interest income were not offset for the non-investor operated facilities, these facilities would gain the benefit of being provided a return on equity, just like the owner operated facilities, without assuming the burden ·of the income offset as assumed by the owner operated facilities. And although appellee argues that P.R.M. § 202.2 forbids a set off of interest income against imputed interest expense, neither the federal regulations nor the P.R.M. explicitly prohibit application of the set off rule to imputed interest. Furthermore, in *Forsyth Co. Hosp. Authority, Inc. v. Bowen,* 856 F.2d 668, 670 (1988), the Fourth Circuit determined that the Department of Health and Human Services had properly applied the interest offset rule to investment income *imputed* to the provider. *See also, Monongahela Valley Hosp., Inc. v. Sullivan,* 945 F.2d 576, 592 (3rd Cir.1991) (holding that the Secretary's policy of *imputing* a related organization's interest income to a provider is proper).

Since the inception of the pertinent regulations on 1 January 1983, the interest offset rule has been applied by the Department to both investor operated and non-investor operated facilities.[8] Such a long and uninterrupted agency application of the regulations through the adjudicatory process "is particularly persuasive" when the "administrative interpreta-

---

**8.** In the NHAB's final decision in the matter of Riverview, it cited five decisions, dating from 1985, wherein the board upheld the imputation of a mortgage debt and interest thereon for non-investor operated facilities. These decisions were: *Charles County Nursing Home, Inc. v. Nursing Home Appeals Board,* Civil Action No. CV 88–1802; *Ashburton Nursing Home, Inc.,* FPE May 31, 1985; *Charles County Nursing Home, Inc.,* FPE June 30, 1986; *Circle Manor Nursing Home, Inc.,* FPE June 30, 1985; *Ivy Hall Inc.,* FPE June 30, 1986.

tion was established at the same time as the legislative enactment and continued uniformly thereafter." *Falik v. Prince George's Hosp.,* 322 Md. 409, 416, 588 A.2d 324, 327 (1991). See also, *Baltimore & O.R.R. v. Bowen,* 60 Md.App. 299, 305, 482 A.2d 921, 924 (1984) (noting that deference is particularly appropriate for interpretations over a long period of time). In upholding an agency finding, the Court of Appeals noted in *Givner v. Comm'r of Health,* 207 Md. 184, 191, 113 A.2d 899 (1955) that, "even though the [provider's] proposal may be reasonable also, the burden to reverse is not to prove an imbalance of reasonableness on the side of the [provider's] proposal but rather *to negate the reasonableness* of the [Agency's] proposal." The trial court failed to give appropriate weight to the Department's long-standing and consistent application of the interest offset rule. In fact, in its Order of Court Reversing Board, dated 29 March 1994, the court indicated that it may have overlooked completely the agency's consistent interpretative approach, as expressed in the five prior cases (*See* n. 8, *supra*) referenced in and appended to the NHAB's written Decision on Remand, when it stated, "[N]othing (no evidence) is pointed to by the Board to support its summary conclusion that the Agency has historically interpreted the regulations to allow an interest deduction from imputed interest." To the contrary, we hold that the Department demonstrated that its interpretatior was reasonable, consistent, and longstanding.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED WITH DIRECTION THAT THE CIRCUIT COURT AFFIRM THE DECISION OF THE NURSING HOME APPEAL BOARD; APPELLEE TO PAY THE COSTS.**