934 A.2d 484

**MONTGOMERY COUNTY, Maryland**

v.

**WILDWOOD MEDICAL CENTER, L.L.C.**

**No. 2280, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Oct. 31, 2007.

James A. Kenney, III, Judge, Ret'd, Specially Assigned, dissented and filed opinion.

**732**

Scott R. Foncannon (Karen L. Henry, Marc P. Hansen, Charles W. Thompson, Jr., County Attorney, on the brief), Rockville, for Appellant.

James Demma, Rockville, and John R. Llewellyn, Germantown, for Appellee.

Panel: BARBERA, THEODORE G. BLOOM,* (Ret'd, Specially Assigned), JAMES A. KENNEY, III,** (Ret'd, Specially Assigned), JJ.

---

* BLOOM, J., participated in the hearing and conference of this case, participated also in the decision and adoption of this opinion, which he authored, and approved the requested changes, but died prior to the date on which the revised opinion was filed.

** KENNEY, J., participated in the hearing and conference of this case while and active member of this Court; he participated in the adoption

THEODORE G. BLOOM, Judge, Ret'd, Specially Assigned.

This appeal by Montgomery County is from a judgment of the Circuit Court for Montgomery County that affirmed an order of the Maryland Tax Court directing the County to refund, with interest, $88,259.25 paid by appellee to record a deed conveying real estate to Wildwood Medical Center, L.L.C., a Maryland Limited Liability Company.

## BACKGROUND

In 1962, Alvin L. Aubinoe and Dorothy B. Aubinoe, his wife, acquired title to certain parcels of land known as Wildwood Manor, in Montgomery County. In ensuing years, multiple conveyances (all duly recorded) were made of undivided partial, fractional interests in the Wildwood Manor property, each for a nominal consideration, either to the children or grandchildren of the Aubinoes or to trusts created on behalf of the children or grandchildren.

As of 22 December 2003, title to undivided fractional interests in the Wildwood Manor property was vested in the names of Alvin and Dorothy's daughter, Dorothy A. Shelton (25%); Worthington H. Talcott, Jr., Trustee of the Dorothy A. Shelton Trust (37.5%); Alvin L. Aubinoe, III, Trustee of the Alvin L. Aubinoe Trust, # 3 (9.375%); Victoria L. Aubinoe (9.375%); Scot M. Aubinoe (9.375%); and Amanda M. Aubinoe (9.375%). Each family member and trust, hereinafter collectively referred to as the Aubinoe Family and Trusts, had acquired title to his, her, or its fractional share of the subject real estate by a succession of duly recorded deeds.

On 22 December 2003, the Aubinoe Family and Trusts, the title owners of the Wildwood property, signed a formal General Partnership Agreement. They assert that they had been operating as a partnership for several years, as evidenced by partnership tax returns they had been filing. On 23 December 2003, the Aubinoe Family and Trusts signed and sealed a

---

of this opinion, with the requested changes, as a retired, specially assigned member of this Court.

deed conveying the property that is the subject of this case to Wildwood Medical Center, L.L.C. ("the LLC"), a limited liability company created for that purpose. The subject property was identified in that deed as follows:

Parcel "B" in the subdivision known as "WILDWOOD MANOR SHOPPING CENTER," as per plat thereof recorded in Plat Book 156 at Plat No. 17744 among the Land Records of Montgomery County, Maryland, together with the right of ingress and egress over a private drive pursuant to an Easement for Ingress and Egress dated December 27, 1989, and recorded among the Land Records of Montgomery County, Maryland in Liber 9166 at Folio 079.

The conveyance listed and described the "Grantor, party of the first part," as follows:

Dorothy A. Shelton formerly known as Dorothy Aubinoe Griffith, Alvin L. Aubinoe, III, Trustee of an unrecorded revocable trust known as the Alvin L. Aubinoe III Trust No. 3, Victoria L. Aubinoe, Scot M. Aubinoe, Amanda M. Aubinoe, and Dorothy Aubinoe Shelton and Worthington H. Talcott, Jr., Trustees of the Dorothy Griffith Shelton Family Trust, all of the above dba Wildwood Medical Center General Partnership, a Maryland General Partnership, party of the first part. . . .

The LLC, a Maryland Limited Liability Company, was described as "Grantee, party of the second part."

The *habendum* and *tenendum* clause of the deed read, "To Have and To Hold the said tract of ground and premises above described and mentioned, and hereby intended to be conveyed . . . in fee simple."

Pursuant to Md.Code (1985, 2001 Repl.Vol., 2006 Cum. Supp.), Tax–Property Article, sections 12–108(y)(2) and 13–405(c), concerning "Recordation Taxes" and "Transfer Taxes," the grantee, the LLC, presented to the Clerk of the Circuit Court for Montgomery County, or one of her assistants, the deed to it from the Aubinoe Family and Trusts as an "[i]nstrument of writing" that purported to convey title to real property as defined in section 12–101(c)(1)(i). And, in accordance with section 12–102 of the Tax–Property Article, the grantee,

the LLC, paid a recordation tax, calculated in accordance with section 12–105. It also paid a county transfer tax in accordance with Title 13 of the Tax–Property Article. The total amount paid by the LLC as recordation and transfer taxes was $88,259.25.

Having paid recordation and transfer taxes in order to record the deed, the LLC requested a refund of those taxes, asserting that, as the grantee of property from a Maryland general partnership, it was exempt from paying such taxes according to provisions in Title 12 and 13 of the Tax–Property Article. The Montgomery County Department of Finance denied the request. The LLC then appealed to the Maryland Tax Court. The Tax Court conducted a hearing and issued a decision in favor of the LLC.[1] Montgomery County was ordered to refund, with interest, the recordation and transfer taxes paid by the LLC. The county then sought judicial review by the Circuit Court for Montgomery County. The circuit court, after conducting a hearing, affirmed the Tax Court's ruling, whereupon Montgomery County filed this appeal.

## DISCUSSION

### I. HISTORY

In Maryland, prior to 1766, title to land, at least an inheritable title, such as fee simple or fee simple absolute, was

---

1. Despite its name, the Tax Court is not a judicial body, but rather, is an administrative agency that acts in a quasi-judicial capacity. *Shell Oil Co. v. Supervisor of Assessments*, 276 Md. 36, 38–48, 343 A.2d 521 (1975); *see* §§ 3–101 to 3–113 of the Tax–General Article. Our review of the Tax Court's decision is precisely the same as that of the Circuit Court. *DHMH v. Riverview Nursing Centre, Inc.*, 104 Md.App. 593, 601, 657 A.2d 372, *cert. denied*, 340 Md. 215, 665 A.2d 1058 (1995). The "substantial evidence" test is our guide when reviewing the Tax court's factual findings. *Id.* at 602, 657 A.2d 372. When reviewing questions of law, on the other hand, we are free to substitute our judgment for the judgment of the Tax Court, and we seek to determine whether it erred as a matter of law. *Id.*
*Maryland–Nat'l Capital Park & Planning Comm'n v. State Dep't of Assessments & Taxation*, 110 Md.App. 677, 688, 678 A.2d 602 (1996), *aff'd*, 348 Md. 2, 702 A.2d 690 (1997).

transferred by livery of seisin, a ritual in which the grantor and the grantee would go upon the land where the grantor would deliver possession of the land by handing over a twig, a clod of dirt, or a piece of turf. Livery of seisin was abolished in Maryland in 1766, and thereafter title to real estate has been transferred only by enrollment of deeds, a substitute for, and equivalent to, an act of livery. *See Matthews v. Ward,* 10 G. & J. 443 (1839). The recording of a deed or lease is a final and complete act that passes title; until this is accomplished, everything else is unavailing. Until the deed is recorded, the legal title remains in the grantor. *See Nickel v. Brown,* 75 Md. 172, 23 A. 736 (1892). The legal title to land does not pass, other than by operation of law, until a deed is properly executed and recorded. *See Kingsley v. Makay,* 253 Md. 24, 251 A.2d 585 (1969). "Recorded" signifies "copied or transcribed into some permanent book." *Maryland Dep't of Natural Res. v. Hirsch,* 42 Md.App. 457, 477, 401 A.2d 491 (1979), *rev'd on other grounds,* 288 Md. 95, 416 A.2d 10 (1980).

The statutory provision that imposes a tax on the recordation of documents that transfer title to real estate is precise in its requirements. With respect to a change of ownership, the recorded document, or "instrument of writing," is a document that "conveys *title* to . . . real property." Tax–Prop. § 12–101(c)(1)(i) (emphasis added).

■ The act of recordation of a deed is the substitute for livery of seisin that effects the transfer of title. An event, occurrence, or transaction that merely reflects a change of **ownership** of property need not even be in writing, as the Court of Appeals noted in *Vlamis v. DeWeese,* 216 Md. 384, 140 A.2d 665 (1958).

■ In *Vlamis v. DeWeese,* Warren E. Malin bought land in Elkton, erected a building on it, and began to operate a garage and automobile sales agency. The following year, Malin sold to Reuben Deilbert a one-half interest, as a tenant in common in the real estate and personal property used in the business, giving Deilbert a deed to an undivided half interest in the land. The deed was timely recorded. They

then operated the business as partners. Several months later, Deilbert died. The issues before the court were the nature of the property and whether Deilbert's daughter had inherited an interest in the real estate. Based on the evidence with respect to the operation of the business, the Court held that, although Deilbert had *title* to an undivided one-half interest in the real estate, the property itself, having been dedicated to and essential to the operation of the partnership, had become partnership property without any formal or even informal transfer from the partners to the partnership. *Vlamis v. DeWeese*, therefore, makes it clear that *ownership* of property may be, either formally or informally, separated from *title* to the property.

## II. THE PRESENT VERSION OF THE STATUTE

In *Dean v. Pinder*, 312 Md. 154, 159, 538 A.2d 1184 (1988), the Court of Appeals traced the history of Maryland's transfer tax:

In 1937, the General Assembly enacted § 213 of Article 81 of the Annotated Code of Maryland under the subtitle "Tax on the Recordation of Instruments in Writing." 1937 Md. Laws. Sp. Sess., Ch. 11, § 213. Since its enactment, this provision has been repealed and reenacted several times and was codified as Maryland Code (1947, 1980 Repl. Vol., 1984 Cum.Supp.) Article 81, § 277 at the time this dispute arose. This 1984 provision provided in pertinent part:

(a) *Written instruments.*—(1) Except as otherwise provided in this section, a tax is hereby imposed upon every instrument of writing conveying title to real or personal property, or creating liens or encumbrances upon real or personal property, offered for record and recorded in this State with the clerks of the circuit courts of the respective counties.

. . .

(b) *Instruments conveying title or securing debts.*—(1) In the case of instruments conveying tile to property, the

tax shall be at the rate of 55 cents for each $500 or fractional part thereof **of the actual consideration paid or to be paid;** in the case of instruments securing a debt, the tax shall be at the rate of 55 cents for each $500 of the principal amount of the debt secured (Emphasis added.)

The Court explained that, "[a]lthough this tax is computable on the amount of consideration transferred, it is not considered a tax on property but rather an excise tax imposed upon the privilege of recording the deed." *Dean*, 312 Md. at 159–60, 538 A.2d 1184 (citing *Central Credit Union v. Comptroller of the Treasury*, 243 Md. 175, 182, 220 A.2d 568 (1966), and *Pittman v. Housing Authority of Baltimore*, 180 Md. 457, 459, 25 A.2d 466 (1942)).

The current version of the "Recordation Tax" are set forth in sections 12–101 through 12–115 of the 2001 Replacement Volume of, and the 2006 Cumulative Supplement to, the Tax–Property Article. As it relates to this case, section 12–101 defines "Instrument of Writing" like the predecessors thereto did, a written instrument that *"conveys title to* ... real property ...." (Emphasis added.) Under section 12–102, a tax is imposed on the recordation of an instrument in writing, that is, a written document that conveys title to real property, as well as to written documents that transfer title to personal property or that creates liens on property.

Section 12–108 contains exemptions from recordation taxes. Subsection (y)(2) of section 2–108, "Transfers from certain entities to limited liability company," provides:

An instrument of writing that transfers *title* to real property from a predecessor entity [such as a Maryland general partnership] to a limited liability company is not subject to recordation tax if:

(i)1. the members of the limited liability are identical to the partners of the converting general partnership. . . .

. . .

(ii) each member's allocation of the profits and losses of the limited liability company is identical to that member's

allocation of the profits and losses of the converting predecessor entity; and

(iii) the instrument in writing that transfers *title* to real property represents the dissolution of the predecessor entity for purposes of conversion to a limited liability company.

(Emphasis added.)

## II. STATUTORY CONSTRUCTION

The statutes governing this case are revenue statutes that impose taxes (recordation and transfer taxes) on, *inter alia*, conveyances of real property that require recordation of deeds, "instruments of writing that require recording in order to transfer title."

▮▮▮▮▮▮ The goal of statutory construction is to discover and effect the General Assembly's intent. *See Maryland–Nat'l Capital Park & Planning Comm'n v. State Dep't of Assessments & Taxation*, 110 Md.App. 677, 688, 678 A.2d 602 (1996), *aff'd*, 348 Md. 2, 702 A.2d 690 (1997).

If, as in the instant case, the parties call upon us to interpret an exemption, we first look to the general principles of statutory construction, and then, narrowing our inquiry, turn to those principles that are applicable to the taxation arena. Ever mindful of our desire to discern and effectuate the General Assembly's intent, . . . we examine the language of the enactment and give to the language its natural and ordinary import.

*Id.* (citation omitted).

▮▮▮▮▮▮ "It is well-settled that when the Legislature has chosen not to define a term used in a statute, that term should be given its ordinary and natural meaning." *Dean*, 312 Md. at 161, 538 A.2d 1184. "[W]hen the term in a statute is a legal term, absent any legislative intent to the contrary, the term is presumed to be used in its legal sense." *Id.*

▮▮▮▮ Appellee's argument for exemptions from recordation tax and transfer tax is based on sections 12–108(y) and 13–

405(c). The former exempts from the recordation tax a limited liability company when recording an "instrument of writing" (a deed) "that transfers *title* to real property from a predecessor entity" (such as a Maryland general partnership) under certain conditions applicable to the members of the LLC, who are the former partners of the grantor partnership. The latter exempts from the county transfer tax an entity exempt from a recordation tax by virtue of section 12–108(y). The key word in section 12–108(y) is "title," defined in *Black's Law Dictionary* 1522 (8th ed.2004), as

> [t]he union of all elements (as ownership, possession and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself. . . .

It is used in the sense of legal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such evidence.

 "Title" and "ownership" are not synonymous. "Ownership" is but one element of "title."

In *Chesapeake & Potomac Tel. Co. v. Comptroller of the Treasury,* 317 Md. 3, 11–12, 561 A.2d 1034 (1989), the Court of Appeals set forth some rules applicable to exemptions from taxing statutes:

> "It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, 'to doubt an exemption is to deny it.' ... [T]he State's taxing prerogative is never presumed to be relinquished and the abandonment of this power must be proved by the party assessing the exemption."

(quoting *Xerox Corp. v. Comptroller of the Treasury,* 290 Md. 126, 137, 428 A.2d 1208 (1981) (emphasis in original) (in turn quoting from *Perdue v. St. Dep't of Assess. & T.,* 264 Md. 228, 232–33, 286 A.2d 165 (1972), which quoted *Suburban Propane Gas Corp. v. Tawes,* 205 Md. 83, 87, 106 A.2d 119 (1954))).

## IV. This Case

 The Aubinoe Family and Trusts could have avoided payment of recordation and transfer taxes upon recording the deed from their partnership to their limited liability company only by a deed conveying their combined titles ("instrument of writing") to the partnership and recording that deed with the clerk of the Circuit Court for Montgomery County or with the State Department of Assessments and Taxation. Then the deed from the partnership to the limited liability company would, by conveying to the LLC title to the Wildwood Manor property, qualify the deed from the partnership to the LLC for the exemptions from recordation and transfer taxes provided by sections 12–108(y) and 13–405. But they would have had to pay the same amount of taxes on *that* conveyance as they paid upon recordation of the deed from the partnership to the appellee.

In short, if the word "title" in section 12–108(y) of the Tax–Property Article is given its technical and legal definition, only an instrument of writing (deed) that conveys *title* to real estate from a "predecessor entity" (in this case, a general partnership) to a limited liability company owned by the same members who were the partners in the partnership would be exempted from payment of recordation and county transfer taxes. Mindful of our obligation to construe tax exemption statutes strictly in favor of the taxing authority, *see Chesapeake & Potomac Tel. Co.*, 317 Md. 3, 561 A.2d 1034, we hold that the deed from the general partnership to the appellee is not exempted from payment of the recordation and transfer taxes collected by Montgomery County because the partnership did not have *title* that it could convey to the LLC.

There is a logical basis for exempting from recordation taxes a deed from a "predecessor entity" conveying title to real estate to a limited liability company composed of the same persons who compose the grantor. In order to convey title, the predecessor entity must have acquired it by a deed, recorded among the land records, on which a recordation tax had been levied and paid. A tax imposed on the deed from

the predecessor entity (in this case the general partnership) to a limited liability company would amount to a second tax on what is, in effect, the same entity in a different form.

In this case, the Aubinoe Family and Trusts sought to avoid payment of recordation and transfer taxes on *both* transfers. In view of the language of section 12–108(y), which exempts a transfer of *title* to real property from a predecessor entity to a limited liability company, we hold that the exemption from the recordation tax provided in section 12–108(y)—and thereby the exemption from a transfer tax provided in section 13–405 of the Tax–Property Article of the Maryland Code—does not apply to a conveyance of real property that does not transfer *title* to that property.

Consequently, we hold that the ruling of the Tax Court to the effect that the appellee was entitled to a refund of the recordation and transfer taxes that it had paid upon the recordation of the deed to it from the predecessor partnership was an error of law, as was the judgment of the Circuit Court for Montgomery County in affirming the Tax Court's decision. Accordingly, we shall reverse the judgment of the circuit court and remand this case to that court with instruction to enter a judgment reversing the decision of the Tax Court.

**JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR ENTRY OF A JUDGMENT REVERSING THE DECISION OF THE TAX COURT. COSTS TO BE PAID BY APPELLEE.**

Dissenting Opinion by JAMES A. KENNEY, III, Judge (Retired, specially assigned).

In its opinion, the Tax Court stated:

The conveyance is exempt from both the State recording and the Montgomery County transfer tax as the transferor was a General Partnership made up of certain Partners or members, and the transferee is a Limited Liability Company made up of the identical members that made up the Partnership as required by Section 12–108(y)(2). The Part-

nership Agreement clearly identifies the members of the Partnership, those members being the same persons who executed the subject deed. The Operating Agreement of the Wildwood Medical Center, L.L.C. states as its members the same identical members of the Partnership.

The consideration of partnership law is critical in the Court's analysis. Section 9A–101(i) of the Corporations and Associations Article defines partnership, "an association of two or more members—of two or more persons to carry on as co-owners of a business for profit under Section 9A–202" of that article. 9A–202(a) states that, except as otherwise provided in subsection (c), the unincorporated association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership and whether or not the association is called partnership, joint venture, or any other name.

The Court believes that Maryland law has supported this provision that's set forth in the appropriate statutes. The transferor named in the subject deed was a Maryland General Partnership, and, further, the Partnership confirmed its existence as such by the terms of the written Partnership Agreement. The intent of the Partners was also manifested by the fact that the United States Partnership Tax Returns for the years 2000, 2001, 2002, 2003, under its Federal Employer Identification Number 52–2292852, further manifests a subjective intent of the Partners by filing said United States Partnership Tax Returns.

The fact that the property was not titled in the name of the Partnership, never titled in the name of or transferred to the Partnership or a trustee or a nominee of the Partnership does not in itself defeat the exemption. The record title is not dispositive as to the requirements for the claimed exemption. It is the intention of the parties, not record title alone that determines whether property not held in the name of the partnership is partnership property. Further, Maryland law does not require a deed to transfer title from the individuals to the partnership for purposes of transferring title of partnership property to a limited liability com-

pany. Thus, by the plain and ordinary meaning of the words set forth in 12–108(y)(2), the statutory exemptions would apply to the subject deed.

The Court of Appeals, in *Williams v. Dovell,* 202 Md. 351, 96 A.2d 484 (1953), concluded that

> where real estate is acquired as partnership property, but is conveyed to the partners by name without reference to the partnership, every right of ownership and disposition is in the partnership, and no interest of the partner in such real estate passes by devise or inheritance or by his individual deed except in the case of a conveyance to a purchaser for value without notice. With that exception, the legal title of individual partners is an empty technicality. The legal title to partnership property cannot be conveyed, devised or inherited as the individual property of any of the partners either as joint tenant or as tenant in common.
>
> The partner's interest in the partnership, which is a personal chose in action, is all that he may assign or bequeath, and upon his death intestate that interest passes to his administrator as personal property.

202 Md. at 357, 96 A.2d 484.[1]

Later, in *Kay v. Gitomer,* 253 Md. 32, 37, 251 A.2d 853, 856 (1969), the Court of Appeals held "partnership property is not subject to dower, curtesy, allowances to widows heirs or next of kin."

Under the Maryland Revised Uniform Partnership Act, Maryland Code Annotated (1975, 1999 Repl.Vol.), § 9A–201 of the Corporations and Associations Article, "[a] partnership is an entity distinct from its partners." *See Republic Prop. Corp. v. Mission West Prop., L.P.,* 391 Md. 732, 895 A.2d 1006 (2006). Section 9A–203 expressly provides that "[p]artnership

---

1. To the extent that appellant contends that the fact that the Partnership agreement in this case was not formalized until 2003 is significant, it is noted that the partners in *Williams v. Dovell* acquired the property as joint tenants in 1937. A formal partnership agreement was not entered into until 1946 when it was required in order to obtain a General Motors dealership.

property is property of the partnership and not the partners individually." Subsection 9A–302(a)(3) indicates that "[p]artnership property held in the name of one or more persons other than the partnership, without an indication in the instrument transferring the property to them of their capacity as partners or of the existence of a partnership, may be transferred by an instrument of transfer executed by the persons in whose name the property is held."

By resting its determination of legislative intent on a distinction between "title" and "ownership," the Majority resurrects an "empty technicality" that has long been put to rest by case and statutory law. We should instead assume that the General Assembly was aware: that partnerships are separate entities from their individual partners; that partnership real property can be held by one or more persons without reference to the partnership in the instrument transferring the property to them; and that those persons can, in turn, transfer that property by an instrument to another person or entity.

Subsection 12–108(y)(1) of the Tax Property Article states that a " 'Predecessor entity' includes a: 1. Maryland general partnership," and subsection 12–108(y)(2) states that "[a]n instrument of writing that transfers title to real property from a predecessor entity . . . to a limited liability company is not subject to recordation tax if: (i) 1. the members of the limited liability company are identical to the partners of the converting general partnership . . ."; and "(ii) each member's allocation of the profits and losses of the limited liability company is identical to that member's allocation of profits and losses of the converting predecessor entity"; and "(iii) the instrument of writing that transfers title to real property represents the dissolution of the predecessor entity for purposes of conversion to a limited liability company." [2]

---

**2.** The Tax Court did not make an express finding as to the satisfaction of subsection 12–108(y)(1)(iii), but such a finding is implicit in its ruling and appellant does not contend otherwise.

A deed is an instrument that conveys title to real property. *Black's Law Dictionary* (8th ed.2004) at 334 defines "convey" as "to transfer or deliver something such as a right or property to another especially by deed or other writing." In this context, "convey" and "transfer" are interchangeable terms. A deed of partnership property from the partners on behalf of the partnership to the limited liability company conveys or transfers title from the "predecessor entity" to the limited liability company. Certainly, no one contends that the limited liability company does not receive legal title to property as a result of such a deed.

Conversion is "the act of changing from one form to another." *Black's* at 356. To require the converting general partnership to first title the partnership property in the name of the partnership in order to avail itself of the exemptions at issue is to ignore the past treatment of partnership property and the recognition that partnership property need not be held in the name of the partnership. To me, the intent of the General Assembly, as reflected by the statutory language, was simply to permit, under certain specified conditions, a general partnership converting to a limited liability company to reflect that conversion in the land records without incurring a recordation or transfer tax. That is consistent with § 4A–213(a) of the Corporations and Associations Article, which provides that "[a]ll property *owned* by the converting general ... partnership ... remains vested in the converted entity." (Emphasis added.) Recording the deed in the land records merely reflects and confirms the statutory vesting of the partnership property in the limited liability company.

That interpretation is not inconsistent with the exemption provided in § 12–108(q) that an instrument of writing conveying real property from corporations, limited liability companies and partnerships to the original shareholders, members, or partners of the partnership "on liquidation, dissolution or termination is not subject to recordation tax." In order to qualify for the exemptions at issue, the conversion of a general partnership to a limited liability company must represent a "dissolution of the predecessor entity" and the real property of

the dissolved partnership must be conveyed to an entity made up of the identical partners with the same rights and obligations as to profits and losses. That conveyance is not unlike a conveyance to the original partners of a dissolved partnership. In both instances, there has been no real change in ownership.

Respectfully, I believe that the Tax Court was correct and that the decision of the circuit court should be affirmed.