704 A.2d 518

Bobby L. STUPLES, Jr.

v.

BALTIMORE CITY POLICE DEPARTMENT.

No. 674, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 13, 1998.

222

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for Appellant.

Bernard Ilkhanoff, Asst. City Solicitor (Frank C. Derr, Deputy City Solicitor, on the brief), Baltimore, for Appellee.

Argued before MOYLAN, HOLLANDER and EYLER, JJ.

MOYLAN, Judge.

The appellant, Bobby L. Stuples, Jr., broadly asserts that his appeal presents the question:

> Should an employee who is found by a court to be terminated wrongfully be reinstated and awarded retroactive back pay pending a legal termination proceeding?

The question, thus framed, presents an issue far too sweeping for our consideration. Its resolution would call for us to sit as the equivalent of a trial court or even an administrative agency, exploring, as a matter of first impression, the nuanced merits of the appellant's cause.

The sober reality is that appellate review is far more constrained. We are not necessarily concerned with the ultimate merits of the appellant's alleged grievance. We are concerned only with whether the judicial machinery designed to deal with those merits was operating properly. The appellant must pose for us a precise instance wherein a trial judge 1) was timely called upon to make a specific ruling, 2) either failed to rule or ruled erroneously, and 3) the ruling, if erroneous, is ripe for appellate review.

## *The Factual and Procedural Background*

The appellant was a police officer who was charged in a departmental disciplinary proceeding with sexual harassment. It was alleged that on several occasions between March 20 and May 22, 1992, he had "directed gestures and sexually explicit language" toward two female police officers. A Hearing Board found the appellant guilty as charged and recommended that his employment be terminated. The Police Commissioner adopted the Board's recommendation and terminated the appellant's employment on November 30, 1994.

The record extract that the appellant has provided includes neither the formal findings or recommendations of the Hearing Board nor the official order of the Police Commissioner. We have, therefore, no indication that either of those parties expressly directed that any action be taken with respect to the appellant's pay status during any of the time periods while the charges against him were pending.

The appellant appealed that action by the Police Department to the Circuit Court for Baltimore City. The Petition for Judicial Review did not raise any issue with respect to the appellant's pay status. It stated simply:

> Bobby L. Stuples, Jr., the defendant in the administrative proceeding, requests that an appeal be entered pursuant to Maryland Rule 7–201 et seq. from the Order of Commissioner Thomas C. Frazier, dated November 30, 1994, upholding the administrative trial board's recommendation of termination from the Baltimore City Police Department.

The appellant also complied with Maryland Rule 7–207(a), which provides that a petitioner

> shall file a memorandum setting forth a concise statement of the questions presented for review, a statement of facts material to those questions, and argument on each question, including citations of authority and references to pages of the record and exhibits relied on.

Pursuant to the Rule, the appellant set forth a concise statement of his three contentions: 1) that he had been found

guilty of offenses for which he had not been charged, 2) that the decision of the Trial Board was arbitrary and capricious and was not supported by legally sufficient evidence, and 3) that the sanction imposed by the Trial Board, termination from employment, was excessive. Not one of those contentions even alluded to the subject of retroactive back pay. As further required by the Rule, the appellant presented a statement of facts material to the questions raised. Those facts had nothing to do with retroactive back pay. As further required by the Rule, the appellant presented argument on each of the three questions raised, along with citations to pertinent Maryland case law. None of that authority had the slightest bearing on the issue of retroactive back pay.

On the fourteenth and final page of the appellant's memorandum the final conclusory sentence did, to be sure, move that "the decision of the Baltimore City Police Department should be reversed and Officer Stuples should be reinstated with retroactive back pay and seniority." The actual arguments raised in and supported by the memorandum, however, had not even alluded to the issue of retroactive back pay and seniority.

Following a hearing in circuit court on August 1, 1995, Judge Thomas E. Noel orally indicated from the bench that he intended to vacate the departmental decision and to remand the case to the agency for further proceedings. We have reviewed the transcript of the hearing before Judge Noel on August 1, 1995 and find that in the course of those proceedings not one word even alluded to the entitlement of the appellant, should he prevail, to retroactive back pay. The almost exclusive focus of the hearing was on the fact that the appellant was indisputably guilty of some grossly inappropriate and harassing sexual conduct in the presence of two female police officers but that the inappropriate conduct had not, as charged, been specifically *directed at them.* It was that lack of agreement between the *allegata* and the *probata* that persuaded Judge Noel to vacate the judgment against the appellant and to remand the proceeding to the Trial Board:

I find that the Board's decision that his conduct created a hostile work environment to be supported by substantial evidence. *The problem I have, however, is with the way he was charged.*

(Emphasis supplied).

Judge Noel's findings, however, made it abundantly clear that the evidence established misconduct on the part of the appellant sufficient to justify his termination from employment:

[W]hen you get to the specification that he directed his conduct toward two particularized individuals, . . . the evidence supports a completely different finding. I find that he was inappropriately charged. *That's not to say that his conduct was not of an offensive nature, and that his conduct would not have constituted sexual harassment,* but he was not properly charged. . . . [H]e was simply mischarged. Consequently, I'm vacating the decision of the Board and remanding this matter.

(Emphasis supplied).

Although it may have been gratuitous in view of his disposition of the administrative appeal, Judge Noel went out of his way to announce his findings 1) that the decision of the Trial Board had not been arbitrary or capricious and 2) that the sentence imposed did not shock the conscience of the court:

I find that *there was not arbitrariness or capriciousness in the decision of the reviewing Board.* The subject of *the sentence or sanction imposed, I don't find to actually shock the court.* Particularly in light of the conduct, because *when you consider the definition of sexual harassment, I believe his conduct meets that standard quite clearly without any problem whatsoever.*

(Emphasis supplied).

Rather than terminate the proceeding in the appellant's favor, Judge Noel's decision was to remand the case to the Trial Board for possible further action:

So the matter is vacated and *remanded to the Board* either to review this matter and one, to see if in fact the decision would be sustained whether this charge is part of the case or not. And two, [if it] would be an alternative procedure to charge him properly, and take testimony on that issue. (Emphasis supplied).

Judge Noel's formal order of September 28, 1995 (filed on October 2) indisputably did not terminate the litigation but only remanded it to the administrative agency for further proceedings. Although directing that the charging document would have to be amended by the deletion of several words, the decision of the circuit court in every other respect placed its imprimatur upon the findings of the Trial Board:

ORDERED, that the decision of the trial board in the above captioned case is vacated and *the case is remanded for further proceedings* upon the court's finding that the Petitioner was charged with "directing" his comments and actions toward various individuals, but that the evidence supported only a finding that the comments and actions were done in the presence of various individuals and the Petitioner was therefore inappropriately charged, and it is

FURTHER ORDERED, that *the case may be retried after the charges have been modified to delete the words "directed towards" and/or resubmitted to the trial board for a determination whether the evidence supports a finding that the comments and actions were "directed towards" various individuals,* and it is,

FURTHER ORDERED, that this Court finds that *there was sufficient evidence to support the allegation that the Petitioner made the comments and/or gestures of which he was accused* and that the Court will not review the credibility of witnesses; therefore, *this Court finds that the trial board's decision was not arbitrary and capricious, and was supported by sufficient facts,* and it is

FURTHER ORDERED, that *the Court does not find that the sentence of termination sufficient to shock the conscience of the Court and that the conduct of the Petition-*

*er meets the standard of sexual harassment and creating a hostile work environment.*

(Emphasis supplied).

In the wake of Judge Noel's disposition, the appellant filed, presumably pursuant to Maryland Rule 2–535, a Motion to Exercise Revisory Power. In it, he raised for the first time the issue of his payroll status, arguing that Judge Noel's vacating of the Trial Board's decision "removed the only impediment to Mr. Stuples' receiving his salary." The motion requested Judge Noel to revise his order "to indicate that Officer Stuples be returned to the payroll as of August 1, 1995, pending further action by the Department."

Curiously, the appellant's request did not go into the subject of back pay retroactive to November 30, 1994, when he was presumably removed from the payroll as a result of the Police Commissioner's approval of the recommendation of the Trial Board. The motion sought only to have the court revise its order so as to indicate that the appellant should be returned to the payroll as of August 1, the day on which Judge Noel rendered his oral ruling at the conclusion of the hearing. The reinstatement to the payroll as of August 1, moreover, seemed to seek no more than tentative payroll reinstatement "pending further action by the Department." Further action by the Department could presumably be anything: 1) the decision to delete several words from the charging document and then to present it anew to the Trial Board; 2) a determination by the Trial Board that the appellant was guilty of the amended charge, or 3) the Police Commissioner's approval of that action by the Trial Board, each action implicating a different possible terminal date for the appellant's restored payroll status. The requested relief was ambiguous in the extreme. Without assigning any reasons, Judge Noel denied that motion on October 31, 1995. It was from that denial that the appellant took his first appeal to this Court.

After issuing an unpublished opinion and then granting the appellant's Motion for Reconsideration, this Court filed an amended unpublished *per curiam* decision on November 25,

1996 (No. 58, Sept. Term, 1996). Our exclusive concern was with the timeliness of the filing by the appellant of his Motion for the Court to Exercise Revisory Power. We were operating on the reasonable, albeit erroneous, assumption that the appellant's request for Judge Noel to amend or to revise his judgment was filed on September 14, 1995. Operating on the further assumption that the final order which the appellant wanted revised had been entered on either August 1 or August 9, we held that the Motion to Revise which had been made before Judge Noel and which was then before us for review could not, because of the untimeliness of its filing, be treated as a Motion to Alter or Amend a Judgment pursuant to Maryland Rule 2–534 or as a Motion to Exercise Revisory Power Under Rule 2–535(a). The only way in which the Motion to Revise could survive the time bar would be for it to qualify under Rule 2–535(b) on the ground that the judgment in the case had been the result of "fraud, mistake, or irregularity:"

> Because the motion was not filed within 10 days, pursuant to Rule 2–534, or within 30 days, pursuant to Rule 2–535(a), it is governed by Rule 2–535(b). Consequently, *the trial judge could have exercised revisory power* and control over the judgment *only in the case of fraud, mistake, or irregularity.*

(Emphasis supplied).

We concluded that Judge Noel's summary denial of the appellant's Motion to Revise might well have been based on his finding that the appellant had failed to show any evidence of "fraud, mistake, or irregularity." Had that been the case, we would have deemed his denial of the motion to have been unassailable. Because of pervasive confusion as to when various pleadings and court orders had been officially filed, however, we elected to be indulgent and to remand the case so that Judge Noel could make a more particularized ruling within the clear and exclusive context of Rule 2–535(b):

> Whether a final order was entered on August 1 or August 9, appellant concedes that its appeal is not timely with respect to the underlying judgment but argues that the trial judge

erred in failing to exercise revisory power over the judgment. *It may well be that the trial judge in this case denied appellant's motion because of the absence of any fraud, mistake, or irregularity. Because of uncertainties created by problems with the record, however, we shall exercise our discretion* and vacate the October 31, 1995 order denying appellant's motion to exercise revisory power *and remand this case* to the trial court *for a ruling on appellant's motion pursuant to Rule 2–535(b).*

(Emphasis supplied).

By the time the case on remand got back to Judge Noel, however, superseding revelations had vitiated the reasoning behind our decision to remand. Although the appellant's Motion for the Court to Exercise Revisory Power had, indeed, not been filed with the Clerk of the Court until September 14, the alternative modality of filing the Motion in the judge's chambers pursuant to Maryland Rule 1–322(a) had been utilized as of August 29. That fact had not been made known to this Court when the case was first before us. Although Judge Noel had no independent recollection of that filing with his chambers, he accepted the affidavit of the appellant's attorney to that effect. Accordingly, the appellant's Motion to Revise had been timely filed within the thirty-day contemplation of Maryland Rule 2–535(a). Judge Noel treated it as such.

On March 11, 1997, Judge Noel, pursuant to our remand, granted the appellant's threshold Motion to Reconsider his earlier (August 31, 1995) denial of the Motion to Revise. Upon such reconsideration, he again denied the appellant's Motion to Revise his earlier judgment. After indicating that he would not order reinstatement or retroactive back pay, he expressly reiterated in that Order and Judgment that he had earlier made "a factual finding that termination would have been appropriate if Petitioner were charged properly."

### *What Precise Judicial Act is Being Appealed?*

■ Even if this appeal should be deemed to be properly before us, a subject to which we will turn our attention

shortly, that March 11 denial of the Motion to Revise would be the precise legal act and the only legal act that could be before us for appellate review. The question for review is not, therefore, as the appellant would frame it, the broad substantive issue of whether the appellant is entitled to reinstatement and to back pay. So sweeping an issue is a question for someone else on some other day.

Our concern is not even with whether Judge Noel was right or wrong in denying the Motion to Revise. Even that is too broad. We are not implying that Judge Noel's ruling was not affirmatively exemplary; we are simply making the point that even a poor call is not necessarily a clear abuse of discretion. At most, the very parochial inquiry we shall undertake is into whether Judge Noel's denial of the Motion to Revise was *so far wrong*—to wit, *so egregiously wrong*—as to constitute a clear abuse of discretion. *Tiller v. Elfenbein*, 205 Md. 14, 18, 106 A.2d 42 (1954); *Eastgate Associates v. Apper*, 34 Md.App. 384, 387–88, 367 A.2d 82 (1977). If we really mean what we say on so many occasions, the ruling in issue does not have to have been right to survive so minimal and deferential a standard of review.[1]

### An Aspect of Discretion:  A Sense of the
### Movant's Equitable Entitlement

■ At the conclusion of the March 10 hearing on the Motion to Revise, Judge Noel explained why he was denying the motion:

> I went through this record quite carefully back in August, and there were rather extraordinary facts, and that's possibly the reason why as much of it has stayed with me as well as the fact I have had the file over the weekend and had the

---

1. Our case law cries out for a few actual and highly illustrative instances when an appellate court will say of a discretionary ruling under review that it was probably wrong but not clearly wrong. We would happily do so here were it not for the fact that Judge Noel's ruling was probably right.

opportunity to reread the file. And I do remember my findings quite clearly.

The case as I understood it at the time, the charging document was improper, and the charges were inconsistent with the evidence introduced against Mr. Stuples. Now, that is the reason that I vacated it and remanded it, because he was not directing his comments or actions towards the other officers. It was merely in the presence of others. And I think that could be rather significant when it comes to a reviewing court. Because when you interpret a criminal charging document or quasi-criminal charging document, specificity is required, and the charging document was inappropriate.

But after listening to arguments and reviewing the record, *I made specific findings to the effect that there was sufficient evidence to support the allegation that the petitioner made the comments and/or gestures he was accused of.* And *the specific [termination] was not sufficient to shock this Court,* and *the preponderance [of evidence]* of the petitioner *met the standard of sexual harassment* [in] that it created a hostile work environment.

(Emphasis supplied).

Judge Noel declined to exercise discretion by way of expanding on his earlier ruling and dealing with an issue that had never been raised before him, in part, because of his obvious conclusion that the appellant's cause was not one of outraged innocence. Judge Noel had vacated the earlier decision of the Trial Board to terminate the appellant's employment not because the appellant was innocent of the charges but only because the pleading document had been technically flawed. It was clearly Judge Noel's conclusion 1) that upon remand that technical flaw would be readily corrected and 2) that the ultimate resolution of the issue would be the appellant's dismissal from the police force because of his improper conduct.

The equities, therefore, did not cry out for any special intervention into an essentially departmental matter. At the

hearing on March 10, no extraordinarily dire circumstances were even proffered to indicate that the resolution of the appellant's financial entitlement could not abide the resolution of the entire case on its ultimate merits. Under those circumstances, Judge Noel's declination to intervene in a matter that was not necessarily before him in any event cannot be deemed a clear abuse of discretion.

### Another Aspect of Discretion: Doubt As to the Propriety of Dealing With an Issue

Judge Noel, moreover, indicated that he was denying the Motion to Revise for yet an additional reason. In addition to his determination that the evidence had shown that the appellant had committed an offense for which termination was proper and that he, therefore, did not deserve to be paid during the period while he was awaiting circuit court review of the Police Department's decision, Judge Noel was also of the opinion that, as a matter of procedure, the issue of the appellant's pay status was not properly before him:

> When the motion came before me to exercise my revisory power, *I denied that motion, because* ... I was indicating that *I didn't feel that it was appropriate for this Court at that juncture to rule on the issue of back pay. I don't think that is a proper matter before the Court.* I still don't feel that it is a proper matter before the Court, and I am going to state specifically why I am of that opinion.
>
> Number one, in light of my factual finding that Mr. Stuples was properly charged, the termination would have been appropriate. And number two, I was dealing with the matter from a procedural standpoint initially. Now, I'm dealing with the substantive.... [H]e would have [been terminated] appropriately had he been properly charged. Consequently I felt that he was not entitled to back pay. That is one of the reasons.
>
> The other is, *I don't know if the Court has the authority to do that, to order back pay.* So even though I am

exercising my revisory authority in this matter, I am, in fact, ruling that this Court will not order back pay.

(Emphasis supplied).

Far from being guilty of a clear abuse of discretion, Judge Noel appears to have been quintessentially sound in declining to entertain, in a post-trial revisory motion, an ancillary matter that had not been part of the administrative appeal presented to him in the first instance. The only thing that had been appealed was the decision of the Trial Board to terminate the appellant's employment.

### a. An Administrative Agency Should, in the First Instance, Interpret Its Own Regulations

█ When an officer is brought up on charges, there are presumably a number of ancillary consequences both during the initial pendency of the charges and then during various stages of review following the Trial Board's determination— total loss or reduction of pay, reassignment, permanent or temporary demotion in rank, possible loss of accrued vacation, loss of seniority, suspension of various benefits, etc. Within the vast bureaucracy of state government generally or within the significant bureaucracy of the Baltimore City Police Department specifically, there are, we would think, some departmental regulations[2] governing such situations and various modalities whereby an aggrieved employee could seek relief or file a complaint. These are purely administrative matters as to which the judicial branch of government has no special competence and with respect to which it will routinely defer to the expertise of the agency in question.

*Dept. of Health and Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App. 447, 453, 586 A.2d 1295 (1991) was very clear on this subject:

Upon appellate review, courts bestow special favor on an agency's interpretation of its own regulations. *Recognizing*

---

**2.** Neither appellant nor appellee, however, has enlightened us in this regard.

*an agency's superior ability to understand its own rules and regulations, a "court should not substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken." Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 513, 390 A.2d 1119 (1978).

(Emphasis supplied). *See Dept. of Human Resources v. Thompson,* 103 Md.App. 175, 189–90, 652 A.2d 1183 (1995). *See also Baltimore Bldg. and Constr. Trades Council v. Barnes,* 290 Md. 9, 14–15, 427 A.2d 979 (1981); *Holy Cross Hospital, Inc. v. Health Services Cost Review Commission,* 283 Md. 677, 685, 393 A.2d 181 (1978); *Fort Washington v. Dept.,* 80 Md.App. 205, 213, 560 A.2d 613 (1989); *B & O Railroad v. Bowen,* 60 Md.App. 299, 305, 482 A.2d 921 (1984). At the most fundamental level, the judicial branch of government is not empowered to micro-manage the executive branch of government. *O'Donnell v. Bassler,* 289 Md. 501, 509–11, 425 A.2d 1003 (1981); *Howard County v. Davidsonville Civic Ass'ns,* 72 Md.App. 19, 49–50, 527 A.2d 772 (1987); *Matthew Bender & Co., Inc. v. Comptroller,* 67 Md.App. 693, 711–12, 509 A.2d 702 (1986).

### b. Statute Law (LEOBR) Is Not Controlling

█ The appellant, implicitly at least, would seem to suggest that his pay status was controlled not by administrative regulations at all but by the statutory provisions of the Law Enforcement Officers' Bill of Rights (LEOBR). Md.Code Ann. (1996 Repl.Vol.) Article 27, §§ 727 through 734D. That is not the case. The appellant relies exclusively on § 734A, wherein the phrase "without pay" is mentioned in one particular instance. That section, however, has nothing to do with routine disciplinary proceedings taken against offending officers. As its subtitle clearly states, it deals only with "Summary Punishment or Emergency Suspension."

Its provision that the Chief of Police may impose the "emergency suspension of police officers without pay" if they have "been charged with commission of a felony" by no means implies that pay may not be withheld in any other circum-

stances. An officer whose employment has been terminated, for instance, will presumably no longer be entitled to his salary, but that is nowhere explicitly stated in the LEOBR. It is at best implicit.

In such a situation, moreover, there is obviously some ambiguity calling for some agency interpretation as to when an officer's employment is, indeed, "terminated." Is it when charges are brought? Is it when the Trial Board has found the officer guilty of those charges and recommends termination? Is it when the Chief of Police adopts the recommendation of the Trial Board? Is it when the circuit court affirms the decision of the Chief of Police? Is it when the Court of Special Appeals affirms the circuit court? Is it when the Court of Appeals affirms the Court of Special Appeals? What of the ambivalent judgment of the circuit court in the instant case, wherein the core finding of the Trial Board is emphatically affirmed but its decision is, presumably only temporarily, vacated on a technicality? The LEOBR does not even allude to such situations and there is obviously much that is called for by way of agency interpretation.

### c. No Record of What Happened, or Should Have Happened, at the Agency Level

Even assuming, purely for the sake of argument, that the appellant's pay status was somehow properly before Judge Noel, nothing was offered before him to reveal 1) what steps the appellant should have taken to request any pay to which he thought he was entitled, 2) what steps the appellant actually took in that direction, 3) what precise response was made to his request by the Police Department, 4) who in the Department made that response, and 5) what avenues of redress or grievance were then available.

### d. The Exhaustion of Administrative Remedies

■ Before the judicial branch will intervene in what is so clearly, in the first instance, an agency matter, there must be an exhaustion of administrative remedies. The observations of Judge Davidson in *Md. Comm'n on Human Rel. v. B.G. &*

*E. Co.,* 296 Md. 46, 50–51, 459 A.2d 205 (1983), are very pertinent here:

> This Court has firmly adhered to the principle that statutorily prescribed administrative and judicial remedies must ordinarily be pursued and exhausted. This principle is not only a requirement of our case law, it is a policy embodied in various enactments of the General Assembly. The rationale underlying this principle was stated in *Soley v. State of Maryland Commission on Human Relations,* 277 Md. 521, 526 [356 A.2d 254] (1976). There, this Court said:
>
>> *"The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise.* Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, *the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed."*
>
> To exhaust administrative remedies, ordinarily *a party must pursue the prescribed administrative procedure to its conclusion and await its final outcome.* Generally, a party can resort to a court only when there is a final order in the administrative proceeding.

(Citations omitted; emphasis supplied).

Our mention of the subject of exhaustion of administrative remedies is not made to suggest that the appellant was in any way foreclosed from seeking further relief for this reason. Were that issue squarely before the Court, the initial burden, we would surmise, would be on the appellee at least to raise the challenge that administrative remedies had not been exhausted. The issue, we repeat, is not formally before us. We mention it only as one of the many possibilities that could have been coursing through Judge Noel's mind as he declined to

entertain a subject that had not, regardless of who had the burden, been thoroughly explored by counsel. It is simply one of many possible reasons why his ultimate decision may not have represented a clear abuse of discretion.

### *No Clear Abuse of Discretion*

■ A Motion to Revise an unenrolled judgment under Maryland Rule 2–535(a) is entrusted to the wide discretion of the trial judge. With respect to such discretion, our observation in *B & K Rentals v. Universal Leaf,* 73 Md.App. 530, 537–38, 535 A.2d 492 (1988), *rev'd on other grounds,* 319 Md. 127, 571 A.2d 1213 (1990), is here pertinent:

> That the matter is left to the discretion of the trial court does not mean that if the action of that court is clearly arbitrary or has no sound basis in law or in reason, it could not be reviewed, but it does mean that *we will not reverse the judgment of the trial court unless there is grave reason for doing so.*

(Emphasis supplied). Judge Noel's decision to allow his original ruling to speak for itself and not to presume to micromanage the Police Department was not clearly arbitrary. It is impossible to say that it had no sound basis in law or in reason. There is no grave reason why it should be reversed.

In view of all of this, for Judge Noel to have ventured forth, unguided by evidence or argument below, into what can be, for the judicial branch, a bureaucratic wilderness would have been presumptuous and foolhardy. We can hardly hold that he was guilty of a clear abuse of discretion for declining to be either presumptuous or foolhardy. It would be equally presumptuous and foolhardy for us to venture forth, unguided by a well-preserved issue that has been fully litigated, into the bureaucratic *terra incognita* of the executive branch.

### *Appeal from Denial of Revisory Motion Is*
### *Not Appeal of the Substantive Merits*

■ There is yet another impediment to the appellant's cause. He argues, implicitly, that no clear preservation of the

issue of his payroll status and no evidentiary hearing with respect to it were required. His argument, of necessity, is that the linkage between 1) Judge Noel's vacating of the Trial Board's determination and 2) the appellant's return to full-pay status should have been so automatic as to be a matter of law. The appellant's ultimate argument has to be that Judge Noel's remand order was flawed as a matter of law because it failed expressly to order that the appellant be returned to the payroll. That being the case, the appellant's position is compromised by his failure to recognize the fundamental difference between appealing from an underlying judgment itself and appealing from the denial of a motion to have that judgment revised or modified.

In *Hardy v. Metts*, 282 Md. 1, 6, 381 A.2d 683 (1978), Judge Digges addressed the difference:

Although this Court has not before had occasion to state the principle in this context, we now hold that when the trial court denies a Rule 625(a) preenrollment request to revise a final judgment rendered on the merits, if that judgment was based solely on a question of law an appellate court will not ordinarily disturb the trial court's discretionary decision not to reopen the matter; *an appeal from the primary judgment itself is the proper method for testing in an appellate court the correctness of such a legal ruling.* To reach any other conclusion would have the effect of permitting, if not two appeals, a delayed appeal of the original legal issue decided by the trial court, a result both undesirable and unintended by the rule.

(Emphasis supplied).

■ If the appellant claims, as he seems to do, that Judge Noel's remand order was flawed as a matter of law for its failure to deal expressly with the appellant's payroll status, he should have filed a timely appeal (assuming, of course, that it was an appealable final judgment) from Judge Noel's primary ruling. He failed to do so. A motion to revise that ruling under Maryland Rule 2–535(a) is not the proper vehicle to attack the legality of the underlying ruling itself. *Cf. In re*

*Adoption No. 93321055,* 344 Md. 458, 475–76, 687 A.2d 681
(1997) ("Except to the extent that they are subsumed in that
question [the abuse of discretion], the merits of the judgment
itself are not open to direct attack. In order to challenge the
judgment itself, a timely appeal must be taken from it."name);
*Blitz v. Beth Isaac,* 115 Md.App. 460, 469 n. 4, 694 A.2d 107,
*cert. granted,* 347 Md. 155, 699 A.2d 1169 (1997) ("An appeal
from the denial of a motion asking the court to exercise its
revisory power is not necessarily the same as an appeal from
the judgment itself. Rather, the standard of review is wheth-
er the trial court abused its discretion in declining to revise
the judgment.")

### *There Is No Final Judgment From Which An Appeal May be Taken*

■ Having observed all of this on the merits of Judge
Noel's exercise of discretion, we are ironically constrained to
add that those merits are in all likelihood not properly before
us. Indeed, it is our holding that they are not.

■ Even absent any motion by the appellee, an appellate
court may, *sua sponte,* raise the issue of non-finality and
nonappealability at any time. *Smith v. Taylor,* 285 Md. 143,
147, 400 A.2d 1130 (1979) ("While neither party to this appeal
made a motion to dismiss, this Court will dismiss an appeal
*sua sponte* when it notices that appellate jurisdiction is lack-
ing."); *Tvardek v. Tvardek,* 257 Md. 88, 92, 261 A.2d 762
(1970) ("Although no Motion to dismiss the appeal on this
ground [that it was from an interlocutory rather than a final
order] was made, we will dismiss the appeal for this reason,
*sua sponte.*"); *Hillyard Construction Co., Inc. v. Lynch,* 256
Md. 375, 379, 260 A.2d 316 (1970) ("We propose to dispose of
the appeal, however, for a reason not raised by the appel-
lee.... It has long been established that no appeal will be
from an order ... [that] is interlocutory only, and not a final
judgment."); *Harkins v. August,* 251 Md. 108, 109, 246 A.2d
268 (1968) ("The Court raised *sua sponte* ... the issue of
whether or not the appellants had a right of appeal in the
instant case.")

### Circuit Court Remands of Administrative Appeals Are Themselves Appealable Final Orders

██ It is also now clear that when a circuit court sits in an appellate capacity to review a decision of an administrative agency and, on such review, vacates the agency decision and remands the matter to the agency for further proceedings, that action by the circuit court is now deemed to be an appealable final order within the contemplation of § 12–301. *Criminal Injuries Compensation Bd. v. Remson*, 282 Md. 168, 177, 384 A.2d 58 (1978); *Dept. of Public Safety and Correctional Services v. LeVan*, 288 Md. 533, 540–44, 419 A.2d 1052 (1980), overruling *U.S. Fire Ins. v. Schwartz*, 280 Md. 518, 374 A.2d 896 (1977).

### Motions to Revise Versus Underlying Decisions Subject to Possible Revision

The appealability of the disposition of an administrative appeal, however, by no means implies the appealability of either the grant or the denial of a subsequent Motion to Revise that underlying disposition. There has been in this case no appeal from the underlying decision of Judge Noel, on circuit court review of the administrative action, to remand the case against the appellant to the Baltimore City Police Department Trial Board for further proceedings. As the winner before Judge Noel, the appellant had no reason to appeal Judge Noel's decision. Although the appellee, as the loser before Judge Noel, might have appealed his decision, it chose not to do so. We are not, therefore, considering the appealability of the underlying "final order" of Judge Noel to remand the case to the Trial Board. What is before us exclusively is the appealability of Judge Noel's disposition of the post-hearing Motion to Revise.

### Denial of Motion to Revise: Not An Appealable Interlocutory Order

██ To be the proper subject of an appeal, the March 11, 1997 denial of the Maryland Rule 2–535(a) Motion to Revise must have been a final judgment. Md.Code Ann. (1996 Repl.

Vol.), Cts. & Jud. Proc., § 12–303 expressly sets out the limited list of interlocutory orders from which an appeal may be taken. The denial of a Motion to Revise under Md. Rule 2–535(a) is indisputably not one of them. *Pappas v. Pappas,* 287 Md. 455, 459–63, 413 A.2d 549 (1980); *Della Ratta v. Dixon,* 47 Md.App. 270, 275–86, 422 A.2d 409 (1980). For the decision of Judge Noel now in issue to be properly appealable, therefore, it must qualify as a final judgment or "final order" within the contemplation of Cts. & Jud. Proc., § 12–301.

### *Rule 2–535(a) Revisory Motions*

With respect to circuit court rulings on motions to set aside or to revise unenrolled decrees pursuant to what is now Maryland Rule 2–535(a), Judge Wilner for this Court analyzed the non-final nature of such rulings in *Scheve v. McPherson,* 44 Md.App. 398, 402–03, 408 A.2d 1071 (1979):

> Save for the statutory exceptions enumerated in Md. Ann.Code, Courts article § 12–303, and two others established by the Court of Appeals [not here pertinent], this Court's jurisdiction is limited to hearing appeals "from a final judgment." Courts article, § 12–301. The initial question, then, is whether the March 16 order setting aside the December 20 decree is a "final judgment" from which an appeal may properly be taken. The test for determining the finality—*i.e.,* the appealability—of a judgment is this: a judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding. *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 91 [394 A.2d 801] (1978); *United States Fire Ins. v. Schwartz,* 280 Md. 518 [374 A.2d 896] (1977).
>
> . . .
>
> *Ordinarily, an order setting aside an unenrolled decree—usually issued pursuant to Maryland Rule [2–535(a) ]—does not finally adjudicate anything, and is therefore not appealable. See Owen v. Freeman,* 279 Md.

241, 249 [367 A.2d 1245] (1977);  *Madison v. State,* 205 Md. 425, 431 [109 A.2d 96] (1954).

(Footnote omitted;  emphasis supplied).

### Rule 2–535(a)  Motion  to  Modify  In  this  Case  Was  Not a  Motion  to  Strike  or  Vacate  a  Judgment  or  Order

Almost all, if not all, of the Maryland cases dealing with the appealability of either the grant or the denial of a Rule 2–535(a) Revisory Motion concerned rulings that had the practical effect of either affirming or vacating, in whole or in part, an underlying judgment on its ultimate merits.  It is very rarely that the underlying "final order" that is the subject of the Motion to Revise has been the circuit court's disposition of an administrative appeal.  It is even rarer, if not unique, that the thrust of the Rule 2–535(a) Motion to Revise is not to vacate the underlying action but only to modify it, as in this case, by adding an interpretive provision and incidental order.

For purposes of further analysis, the analogue in the present case to the "judgment" that is ordinarily the subject of a Motion to Revise is not the agency action but, rather, Judge Noel's disposition, on administrative appeal, of that agency action.  It is the August 1 (or August 9), 1995 order to Vacate and to Remand that becomes our underlying "Decision X." That Decision X coincidentally vacated something else is beside the point.  Our inquiry will deal only with whether the Rule 2–535(a) Motion to Revise sought to or had the effect of vacating Decision X itself.

In this case there was no striking or vacating of Decision X (it was left intact) and all of the cases establishing the non-appealability of the striking or the vacating of a judgment are, therefore, inapposite.  *Owen v. Freeman,* 279 Md. 241, 245–49, 367 A.2d 1245 (1977);  *Gay Investment Co. v. Angster,* 231 Md. 318, 321–23, 190 A.2d 95 (1963);  *Tiller v. Elfenbein,* 205 Md. 14, 18–22, 106 A.2d 42 (1954);  *Corbin v. Jones,* 199 Md. 527, 528–29, 86 A.2d 911 (1952);  *Snyder v. Cearfoss,* 186 Md. 360, 366–68, 46 A.2d 607 (1946);  *Silverberg v. Dearholt,* 180 Md. 38, 40–41, 22 A.2d 588 (1941);  *State v. Balto. Transit Co.,* 177 Md.

451, 453–55, 9 A.2d 753 (1939); *Eastgate Assoc. v. Apper,* 34 Md.App. 384, 386–89, 367 A.2d 82 (1977).

By the same token, there was in this case no denial of a motion to strike or to vacate Decision X for the obvious reason that there was no motion to strike or to vacate Decision X. For that reason, all of the cases establishing the appealability (according to the abuse-of-discretion standard) of the denial of a motion to strike or to vacate a judgment are equally inapposite. *J.B. Corp. v. Fowler,* 258 Md. 432, 433–36, 265 A.2d 876 (1970); *Hamilton v. Hamilton,* 242 Md. 240, 242–45, 218 A.2d 684 (1966); *Eshelman Motors Corp. v. Scheftel,* 231 Md. 300, 301–02, 189 A.2d 818 (1963); *Clarke Baridon, Inc. v. Union Asbestos and Rubber Co.,* 218 Md. 480, 483–84, 147 A.2d 221 (1958); *Weaver v. Realty Growth Investors,* 38 Md.App. 78, 81–83, 379 A.2d 193 (1977); *Dorsey v. Wroten,* 35 Md.App. 359, 361–63, 370 A.2d 577 (1977); *Fritz v. Fritz,* 34 Md.App. 600, 602, 368 A.2d 502 (1977); *Cromwell v. Ripley,* 11 Md.App. 173, 176–77, 273 A.2d 218 (1971).

### *The General Characteristics Of a Final Judgment or Final Order*

If, therefore, we are to find any precedential guidance as to how to classify this exotic procedural butterfly, which is neither the grant nor the denial of a motion to strike or to vacate, we will have to find it in the general definitions of what is final and what is interlocutory.

From as early as 1835, the Court of Appeals has classified as appealable final judgments only those decisions that finally adjudicate all the rights of a party and obviate, therefore, any danger of fragmented or piecemeal appeals. In *Boteler v. State,* 7 Gill & Johnson 109, 112 (1835), the Court of Appeals observed:

To permit an appeal from any decision of the Court below which does not finally settle the rights of the party, or conclude the cause, would enable either plaintiff or defendant to protract the suit to an almost indefinite period.

Thirty-three years later, in *Hazlehurst v. Morris,* 28 Md. 67, 71 (1868), the Court of Appeals reiterated the underlying purpose of the finality requirement as the insuring that all errors can ultimately be disposed of in a single appellate proceeding:

The law has been clearly settled in this State, that "no appeal can be prosecuted to this court until *a decision* has been had in the court below, *which is so far final, as to settle and conclude the rights of the party involved in the action, or denying to the party the means of further prosecuting or defending the suit.* When the proceedings below shall be terminated, an appeal will then lie, and all the errors of the court below, in the progress of the cause, will be proper subjects for complaint of the party, and for the correction of this court."

(Emphasis supplied). *See also Nu Car Carriers, Inc. v. Everett,* 33 Md.App. 310, 311, 364 A.2d 71 (1976); *Tvardek v. Tvardek,* 257 Md. 88, 92, 261 A.2d 762 (1970); *Hillyard Constr. Co. v. Lynch,* 256 Md. 375, 379, 260 A.2d 316 (1970).

It is clear that Judge Noel's denial of the appellant's Motion to Revise did not conclude this action or finally settle the rights of the appellant. The underlying question of whether the appellant's employment with the Baltimore City Police Department will be terminated is still very much alive. The question of the appellant's salary entitlements is also alive. In large measure, the resolution of the salary question may turn on the resolution of the employment question. If it should be determined that charges were improperly brought against the appellant in the first instance, presumably he may be entitled to all of his back pay. On the other hand, a final determination that his employment was properly terminated might foreclose any back pay. *Cf. Cancelose v. City of Greenbelt,* 75 Md.App. 662, 668–69, 542 A.2d 1288 (1988). We do not even speculate as to these questions which are not before us. In any event, it is quite likely that at some future time this controversy between the appellant and the appellee could properly come before an appellate court on all of its ultimate merits. That being the situation, this case is not yet final for

appeal purposes and we are neither required nor inclined to sneak an advanced look at a mere fragment of it.

### Other Means for Seeking Redress Were Not Foreclosed

It is also clear that Judge Noel's denial of the Motion to Revise did not in any way foreclose the appellant's further pursuit of his entitlement to back wages. There are presumably administrative avenues available to him as of this moment. Whatever the final adjudication on the merits of his employment status, the question of his entitlement to back pay can be fully considered, litigated, and decided at that time. An aspect of finality is that the means of further pursuing a right or an interest have been cut off. In this regard, *Smith v. Taylor*, 285 Md. 143, 146–47, 400 A.2d 1130 (1979), observed:

> Ultimately ... it is for this Court to decide which judgments or orders are final and thus appealable under § 12–301. We recently stated that in order for this Court to consider an appeal the "judgment must be so final as to determine and conclude rights involved, or *deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding.*"
>
> Applying this definition to the record in the instant case, it becomes clear that the circuit court never entered any "final judgment." *The circuit court neither determined nor concluded the rights involved nor denied Smith means of further prosecuting or defending his rights and interests....* In fact, *the circuit court indicated unequivocally that it was not determining any of the parties' rights.* Thus, there is no matter before us which is a final judgment so as to be the proper subject of an appeal.

(Emphasis supplied).

### The Merits of the Payroll Question Were Not Resolved

In this case, just as in *Smith v. Taylor, supra,* Judge Noel indicated that he was not determining anything with respect to the payroll issue. It was his conclusion that that issue was

not properly before him. His decision not to disturb his earlier disposition of the administrative appeal did not purport to resolve the merits of the payroll issue in any way. It simply maintained the *status quo ante* as of the moment he remanded the case to the Police Board. In that regard, the words of Judge Adkins in *Planning Bd. v. Mortimer,* 310 Md. 639, 653–54, 530 A.2d 1237 (1987), are very pertinent:

> [A]n order is not certifiable under the Rule [2–602(b), permitting certifications of finality] unless the order displays the characteristics of finality. *The denial of a motion to dismiss is not an order that settles the matter in controversy or adjudicates completely the rights and liabilities of the parties. It merely maintains the status quo of the litigation and, having none of the characteristics of finality, is inherently an interlocutory order.*

(Emphasis supplied).

### No Characteristics of Finality

The denial of the Motion to Revise in this case similarly had none of the characteristics of finality and was, therefore, quintessentially an interlocutory order. We have no choice, therefore, but to dismiss the appeal in this case as one taken from a non-final order in contravention of Cts. & Jud. Proc. § 12–301. Our reason for doing so was well expressed by Judge Harrell in *Jenkins v. Jenkins,* 112 Md.App. 390, 409, 685 A.2d 817 (1996):

> *The policy underlying the final judgment doctrine is* compelling. It is, therefore, *strictly enforced.*
>
> > The final judgment doctrine is based on the theory that piecemeal appeals are oppressive and costly, and that optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court. The underlying purposes of requiring a final judgment for appealability is to avoid constant disruption of the trial process, to prevent appellate courts from considering issues that may be addressed later in trial and to promote efficiency.... *The requirement of finality is thus not a*

*mere technicality, but is an important factor in maintaining a smoothly functioning judicial system.*

4 Am.Jur.2d, *Appellate Review* § 86 (1995 and Supp.1996). (Emphasis supplied).

*APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.*