UNREPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0622

September Term, 2013

TOWANDA KEARNEY ET AL.

v.

WENDELL FRANCE ET AL.

Krauser, C.J.,
Kehoe,
Kenney, James. A., III
    (Retired, Specially Assigned),

JJ.

Opinion by Kenney, J.

Filed: March 2, 2015

This case arises under the Correctional Officer's Bill of Rights ("COBR"), which took effect on October 1, 2010. *See* Maryland Code (1999, 2008 Repl Vol., 2014 Cum Supp.) § 10-901 *et seq.* of the Correctional Services Article ("CS"); 2010 Maryland Laws Ch. 194 (S.B. 887). Appellant, Towanda Kearney, appeals from a decision of the Circuit Court for Baltimore City denying her Motion to Revise its order of March 20, 2013, permitting her to exercise rights afforded to her under the COBR. In the Motion to Revise, she requested that the order expressly award back pay and benefits for the period during which she was separated from her employment and litigating her rights under the COBR. In this timely appeal, she presents one question, which we have rephrased slightly:

> Did the circuit court abuse its discretion or err as a matter of law when it refused to order the Department of Public Safety and Correctional Services ("DPSCS" or "the Department") to pay her back pay and benefits after it terminated her employment in violation of her rights under COBR?

### The Correctional Officer's Bill of Rights

Before October 1, 2010, the disciplinary procedure for state correctional officers was governed under Title II of the State Personnel and Pensions Article ("SPP"), along with other state employees. The COBR's roots are in the Law Enforcement Bill of Rights ("LEBOR"), which applies to certain police officers of state and local agencies, but which did not extend to any local or state correctional officers. *See* House Committee on Appropriations Floor Report, S.B. 887 (2010).

In 2008, the General Assembly passed the Cecil County Correctional Officer's Bill of Rights applicable to correctional officers in that county's detention center. *See* Maryland

Laws Ch. 689 (H.B. 1245) (2008). As stated in the Floor Report for House Bill 1245, its provisions "are similar to the provisions of the Law Enforcement Officer's Bill of Rights." The Floor Report for Senate Bill 887 of the 2010 General Assembly noted the Cecil County legislation under the then current law section of the report. Although provisions of the LEBOR and COBR may differ in certain aspects, we are persuaded that disciplinary cases decided under the LEBOR have instructive value on the question before us in this case. Except under limited circumstances not applicable in this case, both statutes preclude, pending the appeal process provided for in the respective statutes, the implementation of a disciplinary action against a covered officer, of which termination with loss of salary and benefit is one.

### Factual and Procedural Background

On April 4, 2012, appellant was serving as a Correctional Officer III (Sergeant) at the Baltimore City Detention Center ("BCDC"), which is a unit of the Maryland State Department of Public Safety. She was the "Officer in Charge" at the receiving area post where detainees in the facility are prepared for transport to different locations. During her shift, a detainee was found unaccompanied in an unauthorized area of the BCDC. It appeared that the detainee had passed through the receiving area and several other presumably secured locations within the facility. This resulted in appellant and other correctional officers being investigated for failing to monitor and account for the detainee and allowing him authorized access to secure locations.

On June 18, 2012, Commissioner France, the appointing authority for BCDC, issued a Notice of Disciplinary Charges (the "Notice"), which gave appellant 15 days to appeal,

2

and if she did not, advised that her failure to appeal "would constitute an election by [her] to accept the imposition of discipline." The COBR limits the time to bring disciplinary charges against an officer to 90 days (in this case until July 3, 2012). CS § 10-907(a). Appellant was on leave from June 12, 2012, until July 6, 2012. Efforts to provide her with the Notice, including telephone, certified mail, and attempted hand-delivery of the Notice, failed.[1] She returned to work on July 6, 2012. According to appellees, an effort was made to provide her with a copy of the Notice and related paperwork when she returned on July 6, but that she refused to accept it. No further attempts were made to provide her with the Notice. Appellant denied receiving the Notice and refusing to accept and sign for it. She worked her normal shifts after she returned until August 28, 2012. When she did file an appeal, she was issued a final order of termination on August 28, 2012.

Appellant filed a Petition to Show Cause on September 27, 2012, along with a separate Petition for Judicial Review under CS § 10-906(a). The Petition to Show Cause alleged violations of the COBR and, more particularly, that neither she nor counsel or "the agent for the employee organization selected by the correctional officer" had been provided the charges and notice required under CS § 10-908(b) and that as a result she had been denied her "COBR rights to notice and to a hearing before a hearing board."

In their response to the Petition, the Department and Commissioner France again set forth the attempts to provide appellant with notice beginning on June 26, 2012, with the certified letter to two different home addresses on file with the Department along with

---

[1] Certified letters were sent to two different addresses on file with the Department. Neither was received by appellant and both were returned as "Not Claimed by Addressee."

personal service attempts at those addresses, and, when there was no response, leaving a copy of the Notice attached to the door of each address. Because appellant had not identified legal counsel or "formally select[ed] an employee organization for service," they contended that appellant "was not entitled to a hearing before a hearing board because she did not file an appeal of the Notice within 15 days after receiving the charges as required by CS § 10-908(c)."[2]

A hearing in the circuit court was held on February 6, 2013, and an Order dated March 20, 2013, was issued by the court. The court found: (1) that the appellant was entitled to procedural due process; (2) that the testimony that appellant had refused to sign and acknowledge receipt of the charges upon her return to work was not based on personal knowledge of the Warden or supported by any documentary evidence; and (3) that "posting the Statement of Charges at [appellant's] home under these circumstances does not rise to the level of notice contemplated under CS § 10-908."[3] Therefore, appellant was "entitled

---

[2] A review of the Waiver of COBR form indicates that the appellant only waived "Representation during interrogation by legal counsel, agent of exclusive representative or other employee organization of correctional officer's choice, [CS § 10-905(i)]."

[3] CS § 10-908 provides:

(a) If the appointing authority brings charges recommending discipline against a correctional officer, the charges shall contain:
(1) a statement of facts and offenses alleged; and
(2) notice of the correctional officer's appeal rights.
(b) The appointing authority shall provide the charges and notice required under subsection (a)(2) of this section to the correctional officer and to the correctional officer's legal counsel or the agent of the employee organization selected by the correctional officer under § 10-907 of this subtitle.

4

to exercise her rights under CS § 10-908(c)" and the matter was "remanded to the [Department] for further proceedings consistent with [the] order."

The circuit court's order triggered a series of email correspondence, beginning on March 27, 2013, between counsel for the parties regarding both reinstatement and back pay. The Department reinstated appellant on April 12, 2013, but refused her request for back pay. On April 15, 2013, appellant filed a Motion for Revision of the March 20, 2013 Order, requesting an order expressly awarding back pay.

Appellees responded to the Motion for Revision on April 30, arguing: (1) that appellant had been reinstated and afforded her right to appeal the charges against her; (2) that the court had not ordered back pay and that back pay is not "permitted by law or warranted under the circumstances of this case"; (3) that back pay was not requested and the issue of entitlement of back pay was not adjudicated; and (4) that back pay would be a "windfall" because appellant had received unemployment benefits during the months she was not employed by the Department.

---

(c) On *receiving* charges which recommend termination, demotion, or suspension without pay of 10 days or greater, a correctional officer may:
(1) file an appeal under § 11-109 of the State Personnel and Pensions Article; or
(2) within 15 days after receiving the charges, file a request for a hearing by a hearing board.

(Emphasis added).

On May 15, 2013, the court denied the Motion for Revision because the "nature of the relief requested" in appellant's petition for Judicial Review and at the February 6, 2013 hearing, but stated that the denial was "made without prejudice to the [appellant's] ability to seek appropriate relief following the resolution of the administrative hearing."[4]

<u>Discussion</u>

We begin by addressing appellees' assertion that the appeal should be dismissed because the order appealed from is not a final order under Maryland Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Article § 12-301. According to appellees, the "denial of the Motion for Revision did not conclude this action or finally settle [appellant's] rights to back pay and benefits," because "the order clearly stated that it was without prejudice to [appellant's] ability to seek appropriate relief following resolution of the administrative hearing."

In arguing that denying appellant's Motion for Revision was not a final judgment for appeal purposes because it "neither determined nor concluded the rights involved nor denied her the opportunity to further prosecute her claimed right to full back pay and benefits," appellees cite *Stuples v. Baltimore City Police Department*, 119 Md. App. 221, 240-47 (1998). Stuples, a police officer was charged with sexual harassment of two female police officers. A hearing board determined that Stuples was guilty of sexual harassment

---

[4] There was no resolution as to the administrative hearing because, while appellant's appeal was pending before the Office of Administrative Hearings, the matter was resolved by a Disciplinary Action Settlement Agreement on August 19, 2013. The Department, on behalf of Mr. France, agreed to rescind the proposed termination and appellant agreed to waive her right to appeal under the COBR. The Settlement Agreement did not address back pay and benefits.

and its recommendation that his employment be terminated was adopted by the Police Commissioner. On a petition for judicial review of the hearing board's determination, the circuit court found that the record supported a finding of sexual harassment and that Stuples's actions justified termination, but that Stuples had not been "properly charged." *Stuples*, 119 Md. App. At 227. The inappropriate conduct had occurred "in the presence of two female police officers," but it "had not, as charged, been specifically *directed at them*." *Id.* at 226 (emphasis in original). The circuit court remanded the case to the hearing board "for further proceedings" to see "if in fact the decision would be sustained whether this charge [the charge as to the two individuals] is part of the case or not. And two, [if it] would be an alternative procedure to charge him properly, and take testimony on that issue." *Id.* at 228. Following the remand, Stuples filed a Motion to Exercise Revisory Power in which he raised the issue of his payroll status and asked to be paid as of the circuit court remand "pending further action by the Department." *Id.* at 229. The motion was denied. *Id.*

The *Stuples* Court concluded that the denial of the Motion to Exercise Revisory Power was not a final judgment because Stuples's right to back pay had not been foreclosed by the remand in that the "question of his entitlement to back pay [could] be fully considered, litigated, and decided at that time." *Id*. at 247. That conclusion rested on the presumption that the matter of back pay would first be considered in further administrative proceedings which, in turn, could be subject to further judicial review. We believe it is significant for the purposes of a final judgment analysis that *Stuples* arises in the context of a petition for judicial review following a termination hearing. Moreover, the evidence

7

was sufficient to sustain the recommended termination, and the remand related to the appropriateness of the charges in light of the evidence presented. There was no question of notice and there had been no denial of the exercise of Stuple's LEBOR right to the prescribed administrative process of a hearing board prior to the imposition of discipline.

Appellant responds that the order in this case ended "the circuit court's jurisdiction over the show cause proceeding" and that the "without prejudice" provision of the order is "without legal basis." She argues that "there is no statutory means, or case law precedent, for a circuit court to return or resume jurisdiction in such a manner." That is because, in regard to a correctional officer's resort to the courts, the COBR "'establish[es] exclusive procedures for the investigation and discipline of a correctional officer for alleged misconduct,'" citing CS § 10-902. The first is CS § 10-906 which provides for the filing of a show cause why rights under the COBR "should not be granted . . . at any time before the beginning of a hearing by the hearing board," which is in the nature of an equitable proceeding. The second opportunity is judicial review, which is available after the hearing and the final administrative order, and which is a different type of action and provides for a different and more deferential review. CS § 10-911(a); Maryland Rule 7-202.

Under the circumstances of this case, we are persuaded that the show cause proceeding under CS § 10-906 is the appropriate and exclusive procedure for enforcing *prehearing* rights and the denial of the timely filed Motion for Revision was a final appealable judgment. *See generally, McDaniel v. Barnowski*, 419 Md. App. 560, 573 (2011) ("a motion to revise judgment [is] 'clearly subject to appellate review.'" (quoting

8

*Southern Mgt. Corp. v. Taha*, 378 Md. 461, 495 (2003)). Accordingly, we will not dismiss the appeal.

Error or Abuse of Discretion

In appellant's view, after she was terminated without the benefits of the COBR, it was necessary that she be reinstated to her position along with back pay and other lost benefits of her employment in order to vindicate her statutory rights and to make her whole. Otherwise, she, rather than the Department would, "bear the cost of that violation of rights." She relies heavily on the case of *Cave v. Elliott*, 190 Md. App. 65 (2010).

In *Cave*, Elliott was a Deputy Sheriff who, when terminated by the sheriff, Cave, filed a Complaint for Show Cause Order Pursuant to the Law Enforcement Officers' Bill of Rights ("LEOBR"). Md. Code (2003, 2011 Repl. Vol.), §§ 3-101, et seq. of the Public Safety Article ("PS"). The circuit court determined that Elliot was entitled to the due process provisions of the LEOBR, and ordered his reinstatement to his former position, along with back pay and benefits. Cave filed a Motion for Reconsideration in which he argued that reinstatement was not a right guaranteed by the LEOBR. The circuit court denied the motion and Cave appealed, arguing that the order for reinstatement, back pay, and benefits was outside the circuit court's authority.

In affirming the denial of Cave's Motion for Reconsideration, this Court stated "that, when the circuit court finds that an officer's right under the LEOBR has been denied, [LEOBR] § 3-105 authorizes the court to grant or vindicate that right," *Id.* at 91. We explained further:

> To have ordered a hearing before a hearing board without reinstating Elliott as a Deputy Sheriff would have been a meaningless act, because the hearing was required by [LEOBR §] 3-105 to have been held *before* his termination. To have ordered such hearing with reinstatement, but without back pay and benefits, also would not have granted or vindicated Elliott's right, because he was entitled to a hearing before any loss of salary or benefits. Stated otherwise, *the only way for Elliott to have been granted the right that he was denied was to place him in the same position as he would have been prior to his termination, namely, a Deputy Sheriff having received full pay and benefits.* Therefore, we hold that [LEOBR §] 3-105 authorizes the circuit court to order reinstatement with all back pay and benefits where a law enforcement officer is denied the right under [LEOBR §] 3-107(a)(1) to a hearing before a hearing board prior to the taking of disciplinary action by the law enforcement agency.

*Id.* at 92 (some emphasis added).

Appellees contend that the denial of the Motion for Revision in this case was not "so egregiously wrong . . . as to constitute a clear abuse of discretion," again citing *Stuples*, 119 Md. App. at 232 (citing *Tiller v. Elfinbien*, 205 Md. 14, 18 (1954)). They point out that appellant did not expressly request back pay and benefits relief in her show cause petition or during the hearing and that her failure to do so "deprived the circuit court and the Department, of the ability to adjudicate her entitlement to such relief under the specific facts of this case." Moreover, and "significantly," she received unemployment benefits and, thus, an order that she receive "full back pay would represent a windfall."[5]

---

[5] Appellees do not specify those "specific facts" that would preclude her entitlement to back pay, but we presume that they are referring to their position that their inability to provide her with the charges in a timely manner was the result of her actions. In effect, appellees are seeking to review the circuit court's decision in regard to the failure of its

Appellees also contend that there was no legal error because the show cause provision of the COBR does not "authorize a court to award back pay" but rather limits the available remedies to enforcement of the rights guaranteed under the COBR." They argue that the statute "only authorizes the payment of back pay . . . when a correctional officer charged with a felony is suspended without pay and later acquitted of the criminal charges," referring to CS 10-913(c)(3).[6] This means, they assert, that "the State's sovereign immunity prohibits a court from ordering back pay against [the Department] because it is a State agency.

Appellant responds that COBR "establish[es] exclusive procedures for the investigation and discipline of a correctional officer for alleged misconduct," quoting CS § 10-902, and that the show cause proceeding is to enforce rights under the COBR and "to

---

attempts at service and to comply with the COBR and/or to conclude that appellant was attempting to avoid or delay the service of notice. The issue of their failure to provide her with the charges was resolved in appellant's favor in the show cause proceeding, and no appeal was taken from that decision. Those issues are not before us in this appeal and we express no opinion as to them.

[6] Correctional Services § 10-913 relates generally to emergency suspensions. Subsection (b) provides for suspensions of correctional powers of the officer with pay and reassignment to restricted duty pending a determination of a court of a criminal violation or a prompt hearing board of "a correctional facility violation." Subsection (c) provides for suspension "without pay' if the officer is charged with a felony. If the officer is not convicted of the felony (and remains a correctional officer) the suspension is to be rescinded and the officer is entitled to have "any lost time, compensation, status, and benefits restored." Read in context with the statute as a whole, rather than authorizing the payment of back pay in one particular instance, the provision recognizes the general entitlement to back pay until termination with notice and a hearing under the COBR that can be lost only when the officer is charged and convicted of a felony. In other words, there can be no loss of position, back pay, or benefits except under certain circumstances provided in subsection (c).

11

cure any breach of those rights." That is different, she contends, from a judicial review procedure which is limited to ensuring "that the administrative decision is based on substantial evidence and is not premised on an error of law or illegal procedure and is not arbitrary and capricious." Therefore, the show cause court's authority includes the equitable powers necessary to grant or vindicate the right denied, because, otherwise, and citing *Cave* at 94, it would be "inconsistent with the concept of equity jurisdiction to limit the court's authority in ruling on a show cause order such that the relief awarded will not make the officer whole."

As to the failure to expressly request back pay and benefits, she argues that her petition sought "[s]uch other and further relief as [her] causes require." And, because the Department's termination in violation of her statutory rights voided the termination, both her reinstatement and the payment of back pay was required as a matter of law until the statutory breach has been cured. Therefore, an express request for reinstatement, back pay, and benefits was not necessary because the relief "required and due" under these circumstances was established by statute. In support of her position that an express request order was not necessary, appellant observes that the Department reinstated her as the law required without an express order to do so.

She further argues that sovereign immunity is no bar to an order of back pay in this situation because sovereign immunity serves to "prohibit suits against the State or its entities absent its consent," citing *Magnetti v. University of Maryland*, 402 Md. 548, 557

12

(2007). But, here, the General Assembly has, in COBR expressly permitted a correctional officer to sue to enforce their COBR rights in CS § 10-810-906.[7]

We are persuaded that the show cause court had the authority to order back pay and benefits under CS 10-906 when it determined that appellant had been denied a right granted by the COBR. In regard to appellee's claim of sovereign immunity, we agree with appellant. Not only is the action authorized by statute, presumably her salary which is the basis for the back pay to which the employee would be entitled has been budgeted and funds are available to pay it. In sum, the award of back pay is not barred by sovereign immunity. Nor do we believe unemployment benefits renewed by appellant presents a "windfall" to her because under Labor and Employment §8-809(a)(2) benefits may be recovered if a claimant "received or retroactively was awarded wages." Moreover, the award of unemployment benefits does not serve as a shield for appellees in failing to comply with the notice requirements of the COBR. Thus, the question that is before us is whether the failure to expressly request back pay as part of the relief sought in the show case proceeding means that issue has not been preserved for appellate review. *See* Maryland Rule 8-131(a).

---

[7] Appellees cite *Frosburg v. State Department of Personnel*, 37 Md. App. 18, 31-32 (1977), for the proposition that, in the absence of "a specific waiver and a showing there were funds available from which a monetary judgment could be paid, a suit for back pay is an attempt to recover appropriated funds from the State Treasury." *Frosburg* involves a "reclassification case" in which it was determined that the employees should have been reclassified. The Court, in stating that sovereign immunity precluded a payment of back pay for positions to which the employees had not been appointed, distinguished from cases involving an "improper discharge, suspension or demotion" under the Maryland Merit System and for which, as here, a hearing was expressly provided.

*Cave v. Elliott*, 190 Md. 65 (2010), provides guidance to that query. *Cave* arose under the Law Enforcement Officer's Bill of Rights ("LEOBR"). Appellees, referring to the LEOBR as "analogous" to COBR, seek to distinguish *Cave* on the basis that the award of back pay and benefits was raised in the show cause proceeding, which permitted the court to "exercise its discretion" to award them. In appellees' view, *Cave* stands for the proposition that the show cause "may" provide such relief. That, in our view, is too narrow of a reading of *Cave*. The issue that was not preserved in *Cave* was not the officer's right to back pay and benefits, but rather, the Sheriff's failure to contest such an award in his Response to Order to Show Cause when back pay and benefits had been actively sought in the petition for the Order to Show Cause. Back pay and benefits was not discussed by either of the parties or by the trial court during the show cause hearing.

The *Cave* Court found that the officer

> had the right under . . . of the LEOBR to a hearing before a hearing board *prior to the Sheriff's Office taking any disciplinary action resulting from an investigation or interrogation*. To afford [the officer] the right he was denied, the court reinstated him to his former position as a Deputy Sheriff, including the payment of all back pay and benefits. *To do anything less, in our view, would not have granted or vindicated the right that [the officer] was denied*.

*Id.* at 90-92 (emphasis added). In other words, both the LEOBR and the show cause court's "constitutionally-based and statutorily recognized, equitable jurisdiction to provide complete relief" provided the authority to award back pay and benefits and to do so was "*the only way for [the officer] to have been granted the right that he was denied*." *Id.* at 92. (Emphasis added).

14

Here, appellant requested in her show cause proceeding that appellees "be directed to appear and show cause why: (1) she should not receive "the rights and protections of the COBR[;]" (2) the charges should not be dismissed for the COBR violation; (3) should not be offered a hearing before a hearing board; and (4) "[s]uch other and further relief" as her case required. Appellees opposed her requested relief based on the failed attempts to provide her with notice and the resulting failure on her part to request a hearing in a timely manner.

Rejecting that defense, the show cause court concluded instead that appellant was entitled to exercise her rights under CS § 10-908(c) and remanded for "further proceedings consistent" with that determination. As in *Cave*, the result of that determination was to return appellant to the starting line of the COBR disciplinary process in her status as a correctional officer with full back pay and benefits until there was a hearing board decision. That could only be done through reinstatement with back pay, but, appellees provided only reinstatement. Reinstatement without back pay and benefits was a denial of her rights under the COBR and most especially her right to a hearing before there was *any* disciplinary action implemented by the Department. Back pay and benefits flow from reinstatement after an improper termination because there can be no change in her employment status until her rights under the COBR were exercised.

The court denied the motion on the grounds of the "nature of the relief requested," but "without prejudice to [appellant's] ability to seek appropriate relief following the resolution of the administrative hearing." This suggests that the show cause court understood that in the COBR cases that reinstatement and back pay and benefits was

15

dependent on the outcome of the appeal process and that there was an administrative vehicle to do so later. To be sure, it would have been appropriate to request that specific relief (and we would encourage it), but we believe that the general prayer for relief under these circumstances was sufficient and not beyond the general scope and object of the show cause petition. *See Terry v. Terry*, 50 Md. App. 53, 61-62 (1981) ("While a complainant is not entitled to relief beyond the general scope and object of the bill or inconsistent with it, the court is left free to adopt any mode by which it can most readily and effectually administer that relief which the equity of the case may require." (internal quotation and citation omitted)). In absence of an adequate statutorily required notice and the opportunity for a hearing, appellant could not be terminated. Therefore, under these facts, she was entitled as a matter of law to reinstatement, back pay, and benefits. That was not a matter of judicial discretion but rather the required consequence of the improper termination. As we said in *Cave*, "[t]o do anything less . . . would not have granted or vindicated the right that [the officer] was denied." *Cave*, 190 Md. App. at 92.

In our view, this is one of those "exceptional" cases in which "a serious error has occurred." *Central Truck Center, Inc. v. Central GMC, Inc.*, 194 Md. App. 375, 398 (2010). The court determined that appellant was entitled to exercise her rights under the COBR. Once the show cause court was made aware that appellant had been reinstated, it was an abuse of discretion not to award back pay and benefits.

**JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEES.**